Alabama.
  1   160
136   557

## PAYSANT v. WARE & BARRINGER, *et al.*

1. Where there is a written agreement, the law intends that it contains the under-
   standing and meaning of the parties, and as a general rule, it is not permissible
   to show that it does not contain their entire agreement, or that it contains too much.

2. But the general rule which excludes oral evidence to add to, vary, or explain
   a written instrument, has its exceptions.    Thus, if there is a latent ambiguity, or
   a fraud in inserting too much, or in omitting some material part of the contract,
   additional or explanatory proof is admissible *at law.*

3. Where the admission of evidence *to the jury* depends upon the proof of some
   fact as a foundation, such fact must be shewn *to the court.*    If therefore, a
   party would prove his agreement to be different from what is indicated by the
   writing, he should first introduce evidence to the court shewing, *prima facie,*
   fraud, &c.

3. Although written evidence is reputed of a higher grade than the oral declarations
   of witnesses, yet its production will not be required, where the adversary has ad-
   mitted the fact which is to be proved.    Thus, a party who has appointed an at-
   torney in writing, with authority to do a particular act, if he admits it to have

Paysant v. Ware & Barringer, *et al.*

been done and approve it, he cannot object that the power of attorney is not produced at the trial.

5. Where a writing executed as a contract, either from fraud, mistake, accident, or want of skill, does not truly express the intention, or understanding of the parties, it is competent for a court of equity, upon clear and satisfactory proof, to re-form the contract according to their intent.

THE plaintiff in error brought an action of *assumpsit* against the defendant upon a promissory note, for the payment of three thousand dollars. The defendants pleaded, 1st. non assumpsit; 2d. payment; 3d. set-off.

At the trial, a bill of exceptions was sealed at the instance of the plaintiff. From this it appears, that the plaintiff having read the note declared on, rested his case. The defendants, on their part, read to the jury an agreement in writing, entered into between the plaintiff and two of the defendants, viz: Ware and Barringer, and proved that the note was made in pursuance thereof and for the consideration therein stated; which agreement is literally as follows : "We, J. Paysant & Co., Washington Ware and Henry S. Barringer, in accordance of an agreement entered into on the sixth day of January, in the year of our Lord one thousand eight hundred and thirty seven, an inventory has been carefully taken by the above party, in which they mutually agreed that the goods in the possession of J. Paysant & Co. amounted to thirty three thousand seven hundred and eighty-seven 18-100, including the fifteen per cent. on the cost, and the notes and accounts due the firm of J. Paysant & Co. except such as considered *doubtless* of being collected: The amount due by the said firm of J. Paysant & Co. twenty six thousand two hundred and seventy-three 12-100 Dollars, including invoices which were taken with the articles sold previous their being received, and the amount charged for BBls. boxes, drayage of, insurance, &c. together with the amount for goods sold after taking the inventory from the above statement, a balance is due to J. Paysant & Co. of seven thousand five hundred and thirty-four 3-100 dollars, of which Washington R. Ware and Henry S. Barringer are bound to give their notes at twelve months from

21

the first day of February, eighteen hundred and thirty seven
with approved security to J. Paysant, for three thousand seven
hundred and eighty seven dollars; and the said J. Paysant is
bound to give possession of the store, goods, notes and accounts
connected with the firm of J. Paysant & Co. to Washington R.
Ware, Henry S. Barringer and John J. Webster of the excep-
tion of ninety-eight pieces of bagging, which the said J. Pay-
sant reserved, and is left subject to his order: In testimony
thereof, we set our hand and seal, in presence of witnesses, this
1st day of February, in the year of our Lord one thousand eight
hundred and thirty seven.

> WASHINGTON R. WARE, [seal.]
> HENRY S. BARRINGER, [seal.]
> J. PAYSANT, [seal.]

Test: JOSEPH P. TURNER,
    DAVID BARRINGER."

The defendants then introduced witnesses to prove, that it was
understood and agreed by the parties to the aforesaid agreement,
at the time it was made, that such notes and accounts as the
plaintiff had sold to Ware & Barringer, (referred to in the agree-
ment set forth above) as could not be collected, the plaintiff
should be responsible for to them; or that they should have a
"draw back" on the plaintiff to the extent that the collection on
the notes and accounts fell short of their nominal amount. This
testimony was objected to by the plaintiff, but his objection was
overruled, and it was allowed to go to the jury.

In the further progress of the cause, the defendants introduced
a witness to prove that they had paid money for the plaintiff,
with a view to set-off the same against the plaintiff's demand.
This was also objected to by the plaintiff's counsel, unless it
was first shown that such payments were authorized by the
plaintiff; whereupon one of the defendants produced "*a written
power of attorney*" from the plaintiff to him, for that purpose.
To this paper there appeared a subscribing witness, who not
being called to prove its execution, the same was accordingly
rejected. The defendants then called a witness to prove that

the defendant, producing the power of attorney, had previously paid debts for the plaintiff, to which payment he had assented. To the admission of this evidence the plaintiff objected, but his objection was overruled, and the testimony went to the jury. At the foot of the bill of exceptions, the presiding judge made and subscribed two notes of the following tenor:

"1s. As a preliminary to the introduction of parol evidence of what might be a contract in anywise different, or in addition to the writing presented, it was proved by two witnesses, that the plaintiff in this suit drafted said instrument, professing that it had strictly followed what had been previously agreed on by the parties; that said agreement was, that the notes and accounts due the firm were to be considered as *stock;* and that the bad, or doubtful debts, were to be deducted on the maturity of the note, giving that time to make a fair experiment of what could be realized from them: this was proved by two witnesses. The court conceiving the words in said agreement "except notes or accounts, as may be considered doubtless," as having a very indefinite or ambiguous meaning, then allowed the testimony to go before the jury:"

"2d. By two witnesses it was proved, that the defendants had paid debts and accounts for plaintiff, which afterwards and before this suit was brought, was an item included in a settlement of sums to be credited on their accounts, that he fully recognized the authority to do so, and confirmed their acts in relation thereto, without any objection whatever."

A verdict being found for the defendants below, and judgment thereupon rendered, a writ of error is prosecuted to this Court.

PECK, for the plaintiff.

J. D. PHELAN, for the defendants.

COLLIER, C. J.—Two questions arise upon the record in this case—First: Was the parol evidence of what was the contract of the parties admissible, or did not the writing executed

by the parties, exclude such evidence?   Second: Was it com-
petent for the defendants to prove, that the plaintiff assented to
the payment of money by them on his account, without proving
a power of attorney authorizing such payment.

1st.  Where parties have entered into a contract in writing,
they are presumed to have expressed their agreement truly, and
cannot be allowed to add to, vary, explain or contradict it, by
parol testimony.   Written evidence is regarded as a medium of
proof, more high and conclusive, than facts, which depend for
their proof, upon the slippery and uncertain memory of wit-
nesses; and if the former could be suspended by the latter, the
rule of evidence, which requires the production of the highest
grade of proof of which the fact is susceptible, would be entire-
ly disregarded.   Where there is a written agreement, the law
intends that it contains the understanding and meaning of the
parties; and as a general rule, it is not permissible, to show that
it does not contain their entire agreement, or that it contains
too much. (3 Wils. Rep. 275: 1 Ves. jr. Rep. 241: 7 Ves. jr.
Rep. 211: 3 Starkie Evi. 995.)

But the rule we have stated, like all others of a general nature,
has its exceptions in advancement of the ends of justice.   The
first exception occurs in the case of a latent ambiguity.  Thus,
if a person grant an estate to A, so far there is no ambiguity; but
if it should be found that there are two persons by the name of
A, here an ambiguity is raised by extrinsic proof, and by proof
of the same character it may be removed, or the deed would be
inoperative and the intention of the grantor be frustrated.   But
if the ambiguity be apparent on reading an instrument, it cannot
be explained by parol evidence.   This distinction would seem
to result from the principles already stated.   If an instrument
which is in itself wholly devoid of meaning, according to the
usual rules of legal interpretation, or which is indefinite and am-
biguous, and equally capable of several different constructions
and applications, might have one definite meaning annexed to it,
by means of extrinsic oral evidence, it is plain that the oral
evidence, and not the writing, would produce the definite effect.

Paysant v. Ware & Barringer, *et al.*

On the contrary, where the terms of the written instrument are clear, and oral evidence is used to point the application to this, or that, subject matter, the oral evidence does not usurp the authority of the written instrument: it is the instrument which operates; the oral evidence does no more than assist its operation, by pointing out and connecting it with the proper subject-matter: it acts in aid of the written instrument, and performs that duty, which, on every application of a written instrument, must be accomplished by means of extrinsic evidence; that is, it points out the precise object, to which the instrument is applicable.  Thus, we discover, that parol evidence is never admissible to explain an ambiguity, which is not raised by extrinsic facts; and if a man, having several sons, were to devise an estate to one of them, without naming or describing him, parol · evidence would be inadmissible to show which one was meant; though the devise may be inoperative for uncertainty.

The reasons that would exclude evidence to explain a latent ambiguity, would show it to be inadmissible for the purpose of supplying an omission in an instrument, where written evidence was required by law, or for the purpose of giving effect to a written instrument, which is void in law for inconsistency, repugnancy, or ambiguity, in its terms: (3 Starkie's Evi. 995, *et post.)*

Parol evidence is alike inadmissible for the purpose of altering the legal operation of an instrument, by evidence of an *intention* to that effect, which is not expressed in the instrument. Thus, a defendant cannot be premitted to show, that at the time of making the note, the plaintiff agreed that when the note became due, payment should not be demanded, but the note should be renewed: (Hoare v. Graham; 3 Campb. R. 57: Hogg v. Smith; Taunt. Rep. 347: Moller v. Living; 4 Taunt. Rep. 102.)

But a written instrument may be impeached by extrinsic evidence on the ground of fraud.  So, oral evidence is admissible to prove a fraudulent omission of some material part of an agreement.  Thus, if a plaintiff, in reducing a contract to writing,

between the defendant and himself, were to omit a material stipulation, and represent to the defendant, who could not read, that the writing was drawn according to the intention of both parties, the presumption of fraud would be so strong as to let in oral proof of what was their agreement.  And in general, it may be shown, that fraud and imposition were practised upon a party to an instrument, by a fraudulent omission, or misrepresentation of the contents, *especially*, if the party were illiterate: (Joynes v. Statham;  3 Atk. Rep. 388.)

In Doe *ex dem.* Small v. Allen [S Term. Rep. 147,] for the purpose of impeaching a will, and to show that it had been fraudulently submitted to the testator for his signature, parol evidence was admitted, that at the time of signing the will, he asked whether the contents were the same as those of a former will, and that he was answered affirmatively.

Fraud, it is said, is something extrinsic of, and collateral to the writing, and such is the detestation in which it is held by the common law, that it vitiates all acts, even the most solemn proceedings of courts of justice; Lord Coke, says: it avoids all judicial acts, whether ecclesiastical or temporal.  And the learned commentator, upon the laws of England, says, that " every kind of fraud is equally cognizable, and equally adverted to in a court of law; and some frauds are cognizable only there." (2. Starkie's Evi. 586; Bla. com. 431.)

In Smith v. Williams, (1. Murphey's Rep. 126.) fraud is considered, as an acknowledged exception to the general rule, which declares oral testimony inadmissible to contradict or substantially vary a written agreement·  And the learned judge in delivering the opinion of the court says: "As to the exception on the ground of fraud; I conceive that only occurs, where something intended to have been inserted in the contract is omitted, through the misrepresentation or unfair practice of one of the parties.  In such case the omission may be supplied by parol evidence."  And in Mumford v. McPherson, (1. Johns Rep. 414.) the court considered that it could not be a safe, or salutary rule, to allow a contract to rest partly in writing, and part-

ly in parol: and held that where it is reduced to writing, the writing is to be considered as the evidence. So in Mead v. Steger, (5 Porter's Rep. 498,) this court says: "notwithstanding the conclusiveness of the rule, which inhibits the introduction of parol evidence, to contradict or vary a written agreement, a party may show, that by fraud or undue means, there was an omission to state the contract truly."

Having stated these principles as guides to lead us to a conclusion upon the first question, we will now inquire, what interpretation should be placed upon the written agreement of the parties; and whether the facts disclosed in the bill of exceptions authorised the admission of oral testimony, to show that the writing did not contain the contract of the parties.

In the construction of the contract the great object is, to ascertain the intention of the parties, that a performance may be enforced in the sense in which the parties mutually understood it at the time it was made. (Chitty on Con. 19 and 20.) This intention is to be gathered from the entire instrument considered as a whole, and not from distinct and separate parts. Applying this rule we think it obvious, that the term *"doubtless"*, where it occurs in the contract, should be read as *doubtful,* otherwise the clause in which it is found would be unmeaning and inoperative: besides the context sufficiently shows that the exception was intended to apply to notes and accounts, the collection of which was considered *doubtful* by the parties. Taking such to have been the meaning of the parties, it appears from the within contract that the plaintiff sold his interest in a mercantile establishment to the defendants, Ware & Barringer, at an advance of *fifteen per cent.* on the goods, together with "the notes and accounts due the firm of Paysant & Co. except such as were considered doubtless, (doubtful) of being collected." Thus it appears from the writing, that the plaintiff sold only such notes and accounts as were considered collectable by the parties; and that those which were considered doubtful, were *expressly excepted;* and of course remained the property of the plaintiff and his former copartner.

The proof admitted at the trial, to show that it was agreed at the time the contract was executed, that Ware & Barringer should have a set off against their note to the amount of the notes and accounts sold to them by the plaintiff, which they failed to collect, went directly to add to, and vary the writing: and, unless a sufficient foundation was laid for its introduction was clearly inadmissible. It was argued for the defendants, that the omission to insert such a stipulation in the agreement as was shown by parol, was a fraud on the part of the plaintiff, and well authorised the admission of extrinsic proof. The only evidence of fraud, is found in a note appended by the presiding judge, to the bill of exceptions which is as follows; "It was proved by two witnesses, that the plaintiff in this suit drafted said instrument, professing that it had strictly followed what had been previously agreed on by the parties; that said agreement was, that the notes and accounts due the firm, were to be considered as *stock,* and that the bad or doubtful debts were to be deducted on the maturity of the note, giving that time to make a fair experiment of what could be realized from them; this was proved by two witnesses." As *an actual fraud* is odious in itself, and involves the party in a departure from the line of moral duty, it is never presumed in the absence of proof. It need not, however, be shown by evidence direct and positive, but may be inferred from facts and circumstances tending to show its existence. (1 Story's Eq. 199.) The fraud here insisted on, is a misrepresentation or *suggestio falsi.* To establish a fraud on such a ground, it is not only necessary to show a misrepresentation, but that the other party was misled by it. If the misrepresentation was of a trifling or immaterial thing; *or if the other party did not trust to it, or was not misled by it;* or if it was vague and inconclusive in its own nature, or was upon a matter of opinion, or fact equally open to both parties, and in regard to which neither could be presumed to trust the other; in these and the like cases there is no reason why a party should be aided in his defence upon the ground of fraud. (1 Story's Eq. 201,) Apply these principles to what is stated by the judge as the evidence

of fraud, and they will serve to show that the proof is insufficient to establish it. There is nothing from which it can be intended that Ware & Barringer trusted to the representation of the plaintiff, that the writing truly conformed to their agreement, or that the statement made by the plaintiff to that effect, was not a mere matter of opinion, made without an intention to deceive; or that Ware & Barringer were not as capable of interpreting the instrument as the plaintiff. In the absence of proof, showing that the misrepresentation of the plaintiff was made from dishonest motives, or under such circumstances as would authorise the implication of a fraud, the failure to reduce to writing the stipulation which was supplied at the trial by parol, can, at most, be regarded as a *mistake,* attributable to the unskilfulness of the plaintiff, or other cause, and does not constitute a ground for the admission of oral evidence in a *court of law.*

It may, perhaps, be thought that the evidence should have been submitted to the jury, that they might have determined whether the plaintiff in writing the agreement, was guilty of a fraudulent omission. It is certainly correct, as a general rule, that the jury are judges of the facts, yet, this rule is not of such universal application, as to deny to the court the right to determine what has, or has not, been proved. When the admission of evidence depends upon the proof of some fact as a foundation, it is indispensably necessary that such previous fact should be shown to the court. The jury cannot decide the point, otherwise they might be required to render several verdicts in one case. In the introduction of documentary evidence, preliminary proof is usually to be made to the court; it would be a difficult task, so to organize the trial by jury as to withdraw the decision of every fact from the court. And it is not to be regretted that such is the law, inasmuch as truth is attainable by the same process of reasoning no matter by whom ascertained.

We have not thought it necessary to inquire, whether the notes made by the presiding judge at the foot of the bill of exceptions, are to be regarded as a part of the bill, as the result would not be varied; we have so considered them.

22

*Second.*—If the defendant had relied upon the power of attorney he could not have been permitted to show its contents by parol. But such does not appear to have been the state of the case. When the power of attorney was rejected by the court for the want of proof, the defendants then proved that the defendant producing the power of attorney, had made payments previously for the plaintiff, to which he assented; and from the note of the judge to the bill of exceptions, it appears to have been proved, that the plaintiff fully recognized, and confirmed these payments.

It is an acknowledged rule of evidence, that the best *attainable* evidence shall be adduced to prove every disputed fact; but this rule is often misapplied. It is true, that proof in writing is reputed of a higher grade than mere oral testimony, and must in general be produced if in existence, or its non-production will afford ground to presume, that the party has some secret and sinister motive, and is conscious, if the best evidence were adduced, his object would be frustrated: yet, it is not always necessary that the written evidence by which a fact may be proved, should be produced. Its production will not be required where the adversary has admitted the fact which is to be proved; for he is in general barred by his own admission. Thus, if the plaintiff admitted, that he had authorised one of the defendants to pay money for him, or if he recognized and confirmed acts done by that defendant, he cannot be heard to say that his admissions are not binding in law, and insist on the production of the written authority which he had previously given; such we understand to have been the effect of the plaintiff's objection to the admission of the oral testimony of the payment for him; and it was rightfully overruled by the court. (See 1 Starkie's Evi. 393.)

As the circuit court mistook the law upon the first question, and the case must be sent back to another trial, it may be well, briefly to state the principles of law applicable to the facts disclosed in the bill of exceptions, that the rights of the parties may be adjusted, as speedily, and with as little expense as may be.

Mr. Justice Story (1 vol. Com. on Eq. 164.) says: "One of the most common classes of cases, in which relief is sought in equity on account of a mistake of facts, is that of written agree-

Paysant v. Ware & Barringer, *et al.*

ments either executory or executed. Sometimes by mistake the written agreement contains less than the parties intended; sometimes it contains more; sometimes it simply varies from their intent, by expressing something different in substance from the truth of that intent. In all such cases, if the mistake is clearly made out by proof entirely satisfactory, equity will reform the contract, so as to make it conformable to the precise intent of the parties. But if the proofs are doubtful and unsatisfactory, and the mistake is not made entirely plain, equity will withhold relief; upon the ground, that the written paper ought to be treated as a full and correct expression of the intent, until the contrary is established beyond reasonable controversy." In Dupree v. McDonald (4 Dess. Rep. 209,) the court lay down as the " great exception" to the rule that parol evidence is not admissible to alter, or vary a written instrument. That if from any fraud " Mistake or want of skill, the meaning and intention of the parties, has not been properly expressed, but has in reality been changed, justice requires that parol evidence should be admitted to correct the error, so as to attain the real object of the parties." To the same effect in Fitzpatrick & Gallagher v. Smith, (1. Dess. Rep. 340.) Ratcliffe v. Allison, (3. Rand. Rep. 537.) McMahon v. Spangle, (4. Rand. Rep. 51 ) and many English and American cases collected in the notes to 1. Story's Eq. 164-5 *et post.*

Mr. Starkie in his treatise on evidence, (3. vol. 1018,) observes, that the practice of admitting oral evidence, to correct a mistake in writing is more frequent in courts of equity than of common law. And in a note on the same page it is said, the usual, and certainly the safer course, in case of a mistake is, to apply to a court of equity for relief in the first instance; but a party is not obliged to resort to a court of equity for relief; and there seems to be no reason why such evidence should not be received by way of defence in a court of law.

In Fitzpatrick v. Runyon, (8. John's. Rep. 375,) it was held that parol proof was generally inadmissible in a court of law, to show a mistake in a written agreement. And in Jackson v. Sill

(11. John's. Rep. 201) the will described the subject of the device thus, "the farm which I now occupy;" parol evidence was adjudged to be inadmissible, to show that the testator intended to devise the whole of his real estate at W. including a farm of ninety acres in the tenure of A. under a lease, and that he gave instructions for that purpose to the scrivener who drew the will. This latter case was decided in a court of law; those noticed previously, in which mistakes were corrected, were cases in equity.

Without extending this opinion by the citation of cases to the point, whether parol evidence may be introduced at law, to show that a written instrument, has, through mistake or unskilfulness omitted to set forth truly the contract of the parties, we would remark, that we have been able to find no adjudged case like the present, in which such evidence has been admitted. That, in some cases the proof of mistake has been received at law, cannot be disputed; but in these, it is apprehended, will be found circumstances clearly distinguishing them from the present. We are entirely satisfied, if the defendants would defend themselves upon the ground of a *mistake*, that they must resort to equity, where they can obtain ample justice according to the evidence they may furnish.

It remains but to add that the judgment of the Circuit Court must be reversed and the case remanded.