## LAVENDER et al. v. LEE.

1. When a deed, by the mistake of the scrivener, fails to indicate the true intention and meaning of the donor, the parties may reform the deed, by the execution of another, amd a court of chancery will give effect to the last deed.

2. A deed, by which slaves are conveyed to one, in trust, " to receive the hire, labor, and services of the slaves, for the use, benefit, and behoof, of himself, his wife, and his present and future children, and shall not be required to account to his wife, or children for the same," does not vest in the trustee, such an interest, as can be sold for the payment of his debts.

3. In such a case, if a creditor of the trustee causes the slaves to be sold, chancery has jurisdiction to prevent the trust, in favor of the wife and children from being defeated. DARGAN, J., dissenting.

Lavender et al. v. Lee.

Error to the 12th Chancery District. Before the Hon. A. Crenshaw, Chancellor.

Aaron Lee, the father of the complainant, on the 4th day of January, 1844, executed a deed, whereby he conveyed to the children of Noel Lee, two slaves, with this proviso: "Nevertheless, the said Noel Lee, is to have the use of said slaves as long as he lives." The deed expresses, that it is to be considered as the portion of the estate of the grantor, that would have fallen to the said Noel Lee. On the 22d day of March, 1845, with the consent of Noel Lee, the grantor, executed another deed, in reference to the same property, referring to the deed of the 4th January, 1844, and which was also made with the consent of Noel Lee, which deed recites, "that the children of the said Noel Lee, are not named in the deed, nor is any provision made for such as may be hereafter born, which was intended to be done, and that said deed was made with the intention, that the said negroes, and the proceeds of their labor, should be held by said Noel Lee, for the support of himself, family and children, free from his debts, contracts, and engagements of any kind; but from the inartificial manner in which it is drawn, the intention was not clearly set forth as it was intended to be. Therefore the grantor, by and with the advice and consent of the said Noel Lee, for the consideration expressed in the deed of January 4th, 1844, (which was the natural love and affection the grantor bore towards his grand children, the children of the said Noel,) and with the view to reform the deed of 1844, did give, grant, bargain, sell, and assign to the said Noel Lee, the said negro slaves, to have and to hold the same to himself, the said Noel, his executors and assigns forever. In trust nevertheless, and for the following uses and purposes, and no other: to permit the said Noel Lee to have, hold, and receive the hire, labor, and services of said negro slaves, and the services of the future increase of the females, for the use, benefit and behoof of himself, his wife, and his present and future children, during his life, for the maintenance of him-

self. and family, without any account to his said wife and children, for the same, free from the debts, contracts an engagements, of the said Noel Lee, and in no way subject to them, and immediately after the death of said Noel Lee, the said slaves, with their future increase, are to vest in the children of the said Noel Lee, that may be living at his death, share and share alike.

Noel Lee being indebted at the date of the deed of 4th January, 1844, and also at the date of the deed of March, 1845, judgments were obtained against him before a justice of the peace, and levied on one of the slaves, at the suit of the plaintiff in error. The judgments, however, were not obtained before the deed of the 22d March, 1845, reforming the deed of January, 1844, was executed.

Executions were issued on the judgments, and levied on one of the slaves. The bill was filed in the name of Noel Lee alone, to enjoin the sale, and to establish the trust as declared by the deed of March, 1845. An injunction was granted, but before it was served, but after the plaintiff in execution had notice of it, the negro was sold, and purchased by Calvin C. Sellers, who was made a party by a supplemental bill. The defendants answered the bill, and proof was taken. The testimony of Aaron Lee shows, that he intended to secure the property to Noel Lee during his life, for the purpose of supporting his family, but did not intend it should be subject to his debts, and to carry out this intention, the deed of March, 1845, was executed, reforming the deed of 1844.

The chancellor rendered a decree establishing the deed of 1845, declaring the property thereby, not liable to the debts of Noel Lee, and ordering the putchaser, Sellers, to restore to complainant the negro purchased at constable's sale.

This decree is assigned for error.

C. C. Sellers, for plaintiff in error.

Porter & Brodie, contra.

1. The deed to Noel from Aaron Lee exempted the slaves from liability for his debts. Noel was little more than a trus-

Lavender et al. v. Lee.

tee. Gott v. Cook, 7 Paige, 521; 8 Conn Rep. 447; Spears, trustee v. Walkley, 10 Ala. 328.

2. Equity has jurisdiction. 1 Story's Eq. 80, 81, 96; 7 Ala. 917. Statute only allows a third party to interpose a claim. Clay's Dig. 211, § 52; Phil. Dig. 98, § 49, 99, 55. But if the right can be tried at law, this will not divest equity of its jurisdiction. Sellers was a purchaser *pendente lite.* Murray v. Ballou, 1 John. Ch. 566; West v. Belches, 5 Munf. 187. Lee need not have made any other co-complainant with him. This case is exactly analagous to that of an executor filing a bill for injunction to restrain a levy upon property of an estate, to satisfy an execution obtained against him as an individual.

DARGAN, J.—All the property of a debtor is liable to pay his debts, whether his title thereto is legal, or equitable merely. If the debtor has the legal title, it is liable to be sold at law; if his title is merely equitable, it can be sold by an application to a court of chancery. Hence it is only necessary to ascertain, if Noel Lee has any distinct interest in the slaves conveyed by the two deeds.

By the deed of the 4th January, 1844, the slaves are conveyed to the children of Noel Lee, with the reservation, " nevertheless, the said Noel Lee, is to have the use of said estate, so long as he lives." It is too plain to admit of argument, that by the terms of this deed, a life estate is given to Noel Lee in the slaves, and that after this estate determines, the slaves belong to his children. It might be questioned, whether this estate could be divested by a subsequent deed, reforming the deed of 1844, to the prejudice of creditors, in the absence of all proof, as to a mistake *in fact,* fraud, or imposition in the *execution* of it. But the view I take of the case, renders it unnecessary to examine, whether a mere mistake as to the legal effect of a deed, can be corrected to the prejudice of the rights of creditors, for by the deed of March, 1845, reforming the deed of January, 1844, according to the true intention of the grantor, an interest is still given to Noel Lee, liable to be sold.

It is true, that by the terms of the deed of March, 1845, the intention of the donor is fully and clearly expressed, that

the property shall not be liable to pay the debts of Noel Lee,
the son; but that intention cannot control the policy of the
law, that declares the property of the debtor liable to pay
his debts.   See the case of Rugely & Harrison v. Robinson,
10 Ala. 702.   Without regard therefore to the intention of
the grantor, if the grantee take a distinct interest in property,
by the terms of a deed, or will, whether that interest be le-
gal or equitable, *the creditors of the grantee* have the right to
subject it to their demands.   I admit, that if the objects of
the grantor's bounty be inseparably connected, as if they be
a husband, his wife and children, and by the terms of the
deed, a joint interest is vested in all of them, the husband not
having a separate interest, or *one that can be separated*, with-
out injury, or destruction to the rights of the other grantees,
then his interest cannot be reached in satisfaction of his debts,
for the law will not take away, or destroy the rights of joint
owners, who are not bound by the debt, in order to reach
the interest of one who is bound.   See 2 Young & Coll. R.
98; 10 Ala. 702, and the cases there cited.   If therefore, by
the terms of this deed, an intest in the use and possession of
the slaves, had been given to the wife, and the children of
Noel Lee, and the interest thus given to the wife, so secur-
ed that it would not vest in the husband, then the interest of
Noel Lee, could not have been reached by execution, be-
cause the subjects of the grant are inseparable, and to trans-
fer the right of Noel Lee to his creditors, would be to des-
troy the right of the other grantees, if we permitted the cre-
ditor, or purchaser, to enjoy the right of Noel Lee, after the
purchase.

But by the terms of the deed of March, 1845, the slaves
are conveyed to Noel Lee, in trust, to permit Noel Lee to re-
ceive the use and profits of their labor, for the use of himself,
his wife, and children, during his life, for the maintenance
of himself and family, without any account to his said wife
and children for the same.   The legal effect of this convey-
ance is, to give Noel Lee a life estate in the slaves, and is,
in my opinion, the same in legal effect, as the deed of Janua-
ry, 1844.   Noel Lee is invested with the legal title; he may
receive the profits, and hire of the slaves, and he is not bound
to render any account to his wife, or children, of those pro-

fits. What interest then have the wife and children in the slaves during the life of Noel Lee? He is in possession, receiving the profits, and is authorized by the terms of the deed to do so; and is bound to render no account to his wife, or children. Could a court of equity force him to render an account to his family? Their title is derived by the deed, and by the deed, which is the evidence of their title, they are prohibited from asking for an account of the profits of the slaves, during the life of Noel Lee.

The complainant therefore has a separate and distinct interest in the slaves, to wit, a life estate, which can be sold under execution. The chancellor therefore erred in his decree, and the same, in my judgment, should be reversed, and the bill dismissed.

*Per curiam,* CHILTON, J.—A majority of the court, are unable to perceive any error in the decree of the chancellor. The proof in the record very clearly shows, that the deed executed and delivered by Aaron, to Noel Lee, on the 4th January, 1844, by a mistake of the scrivener, failed to speak the true intention and meaning of the donor; and as a court of chancery would doubtless have reformed the deed, it was permissible for the parties to do what the court would have done for them. And it was the duty of the chancellor to give effect to the last deed, so as to carry out the intention of the donor, and which he failed by mistake to insert in the original contract. 1 Ala. Rep. 170; 8 Ib. 553.

Assuming the last deed, made on the 22d March, 1845, to be the true exponent of the donor's intention, the question is, does it vest in Noel Lee such an interest as can be sold under executions at law? We think it quite clear that it does not. He holds it in trust to receive the hire, labor and services of the slaves " for the use, benefit and behoof of himself, his wife, and present and future children." Here is a direct and positive trust estate created in him, in the benefits of which he is to participate with his wife and children, the latter, as is shown by the proof, being the peculiar objects of the donor's bounty. Noel Lee has no interest which can be separated from theirs, but they are collectively to enjoy the *use, services* and *labor* of the slaves, and it is perfectly clear

the trust will be defeated, and the object of the donor wholly frustrated, if the slaves can be seized and sold for the debts of the trustee. The deed contemplates the *personal* use of the chattel, which is utterly inconsistent with a separate interest in Noel Lee. See Rugely & Harrison v. Robeson et al. 10 Ala. Rep. 702, and the numerous authorities there referred to. Such interest being incapable of separation, is not *subject to his debts* existing at the time of the gift, but the slaves must remain in his possession, "for the maintenance of himself and his family," composed of his wife and several children. That he is not required "*to account to his wife and children for the same,*" does not, in our opinion divest the interest which it was the intention of the donor to vest in them. The obvious meaning of the expression is, that Noel Lee, the husband, should exercise his discretion in employing the slaves for the best advantage in the support and maintenance of his wife, and children. That being a common fund, or source of support and maintenance for the family, the donor did not intend he should be held to see, that each of the beneficiaries should share equally in the benefits arising therefrom, but that the property should be enjoyed by them *as a family*, without the right to institute the inquiry on the part of either, whether there has not been a greater appropriation of the services of the slaves to one than to another. Should Noel Lee act dishonestly, and withhold the labor of the slaves, and their use, from the other beneficiaries, refusing them a maintenance and support out of their services, we should not hesitate, setting as a court of chancery, to enforce the trust according to the true intention of the donor, as expressed in the deed, notwithstanding this provision in the instrument.

The bill contains equity. The trustee, who is the complainant, represents the *cestuis que trust*, and there was no necessity for making them parties to the bill. And as the creditor of Noel Lee sought to take a legal advantage of the mistake in the deed, it was competent for the chancellor to confirm, and establish the act of the parties in reforming it, and to direct, and aid the trustee in carrying out the trust for the benefit of his wife and children, by enjoining the creditor of the trustee, who sought to defeat and destroy it by

levy and sale. Our conclusion is, that the decree of the chancery court should be affirmed.

Decree accordingly.