## WADDELL *vs.* GLASSELL.

1. As a general rule, parol evidence is not admissible to add to, vary or explain a written instrument, but if a material part has been inserted by the fraud of one of the parties, this furnishes an exception to the rule, and parol proof is admissible at law to establish the fact.

ERROR to the Circuit Court of Sumter.    Tried before the Hon. Preston G. Nash.

THE plaintiff sued the defendant in error on a bond, for not delivering at Moscow forty bales of "good fair" cotton, which he had undertaken to deliver, in consideration of the rent of the plaintiff's plantation and hire of his negroes for the year 1841. The bond was executed on the 30th April 1841, and the defence relied on was that, by the contract of the parties, the defendant was to deliver forty bales of *average* cotton, and that the words *good fair* had been fraudulently inserted in the bond by the plaintiff.    To make good his defence, the defendant offered in evidence a letter addressed to him by the plaintiff, dated the 23d March 1841, which proposed the terms of the contract, and described the cotton as *average* cotton, and in which he authorised the defendant, if he was satisfied with the terms, to show the letter to one Brown, the then overseer, and assume control of the premises.    To this evidence the plaintiff objected, but his objection was overruled, and the letter was read to the jury.    The defendant proved by said Brown that the defendant read the letter to him about the time of its date and took charge of the plantation.    The defendant then offered in evidence the deposition of one Desha, which was objected to by the plaintiff, but his objection was overruled and the deposition allowed to be read.    This witness stated, "I remember distinctly the quality of cotton that Glassell was to pay Waddell.    The quality, described in the instrument as *good fair*, was certainly intended by Waddell as meaning an average quality of cotton usually produced on plantations.    The reason that my recollection is so distinct in reference to the particular kind of cotton, is this— Waddell informed me that he had made a contract with Glassell, and showed me the form of an instrument which he had prepared and had designed for himself and Glassell to sign, and in

which the term *merchantable* was used to designate the quality of the cotton, &c.; I saw no objection to it except in the use of the word *merchantable*, and stated to him that, according to the classification of cotton in Mobile, any kind of cotton was considered merchantable that would sell, and advised him to substitute the words *good fair*, adding that *good fair* would be a better quality of cotton, according to the Mobile classification, than an *average* crop, but that he would be safe from any attempt at imposition on the part of Glassell—which advice he took, saying that he only desired an *average* quality, and that if Glassell would deliver him that quality of cotton, there would be no difficulty between them."

To the rulings of the court the plaintiff excepted and now assigns them as error.

HAIR, for the plaintiff:

The contract is for good fair cotton, a mercantile term well known and understood in the State of Alabama.

The legal questions in this case are all raised in the bill of exceptions. The contract between Waddell and Glassell, which is the foundation of this suit, was entered into on the 30th day of April 1841. The letter of Waddell which was written to Glassell, and bears date the 23d day of March 1841, was permitted by the court to be read to the jury, to vary or contradict their written contract which was made more than a month afterwards.

The evidence of Robert Desha, jr., is in reference to a conversation had between him and Waddell previous to the time the contract was made between Waddell and Glassell, and goes on positively to contradict the written contract. He states in his deposition "that the quality of cotton, described in the instrument as good fair, was certainly intended by Waddell as meaning an average quality of cotton commonly produced on plantations," although he was not present at the making of the contract, neither did he ever hear the parties conversing upon the subject; yet the evidence of Desha, Brown, and the letters of Waddell, were all permitted by the court to go to the jury for the purpose of contradicting and varying the written contract.

" When a contract is reduced to writing that alone must be the evidence of its terms."—Wason v. Roe, 16 Verm. 525; 1 Har-

rington Ch. Rep. 427 ; 5 Ark. 65; Hair v. Labrouse, 10 Ala. 548; Peyton v. Ware & Barringer et al., 1 ib. 160.

In an action on a written agreement, evidence of declaration made by party at the time of executing it is not admissible.— Wesson v. Carrol, Minor's Ala. 251.

In a question of doubt the contract is to be most strongly construed against the party stipulating to pay a debt or perform a duty.—Evans v. Saunders, 8 Port. 497; Greenl. Ev. §§ 275-7 ; 3 Phil. Ev. 1395; 5 Port, 498; 12 Ala. 678; Litchfield v. Faulkner, 2 Ala. 280.

"Where a contract has a definite meaning, it cannot be altered by parol."—3 Stew. 140; Phillips v. Longstrech, 14 Ala. 337.

R. H. Smith, for the defendant:

The words " good fair," if taken in their ordinary sense, signify a medium or average quality. It may have a different signification attached to it by usage at different places. It may and does in mercantile language, mean different things in Liverpool, Mobile and New Orleans. In Sumter, where this contract was to be executed, it must be supposed to have a still different one —the common meaning. If so, the testimony merely gave effect to this. But if a term be vague or general, or have several meanings, parol evidence may be given to show what the parties intended.—1 Greenl. Ev. §§ 286-8-92.

To get at the meaning of "good fair," it was necessary for the plaintiff to prove its mercantile signification, and it was proper to do so.—1 Greenl. Ev. 292. It was then certainly competent for defendant to prove that the words were not employed in that sense.

The case of Taylor v. Briggs et al., 2 Car. & Payne, 525, is to the point that the contract must be determined by the meaning of the expression in Sumter county, and that parol evidence of the intention of the parties could be given.

But the evidence went to show a fraud by Waddell in having the expression inserted, and there is no doubt, but if so, the evidence was proper.—Paysant v. Ware & Barringer, 1 Ala. 160.

PARSONS, J.—The contract on which this suit was brought was between a lessor and his lessee. The premises leased were

in Sumter county, and the contract was made and to be per-
formed in the county, without reference to any mercantile or
other usage or custom, except as stated hereafter. The only
part of the contract which is material to be noticed, is the stipu-
lation of the defendant, who was the lessee, to deliver to the
plaintiff, who was the lessor, forty bales of cotton. The con-
tract was made in March 1841, and the defendant at that time
took possession under it. By the contract that was actually
made, the defendant was to deliver to the plaintiff forty bales of
cotton *of an average quality.* The plaintiff's letter and the evi-
dence of Brown prove that this was their contract. The con-
tract was not attempted to be reduced to writing, and signed by
the parties, until the 30th day of April 1841. As written, it was
for forty bales of *good fair cotton.* In the court below the de-
fence was that the words good fair cotton, instead of cotton of
the average quality, were inserted in the contract as written, by
fraud on the part of the plaintiff.

The general rule is that parol evidence is not admissible to
add to, vary or explain a written instrument, but if a material
part has been inserted by the fraud of one of the parties, this may
be proved at law by parol evidence.—Paysant v. Ware & Bar-
ringer et al., 1 Ala. 160. It is also clear that written evidence,
such as the plaintiff's letter tending to prove the fraud, is ad-
missible. As the letter showed what the contract was, and as
the contract as written varied from it, the letter was evidence
upon the question of fraud, though not conclusive, nor of itself
sufficient. The plaintiff also objected to the evidence of Mr.
Desha, but it was admitted. He proved that the plaintiff, after
the contract was made, but before it was reduced to writing,
learned from him, the witness, that good fair cotton, according
to the Mobile classification, was superior to the average quality,
and the plain inference from what the plaintiff said at that time
is, that he then determined to prepare the written contract for
the delivery of good fair cotton, and a part of what he said would
authorise the inference that he did not intend to inform the de-
fendant of the effect of the words good fair, and that he supposed
him to be ignorant of it. The contract, as written, was for the
delivery of good fair cotton, but there was no other evidence
that the defendant did not consent to modify his contract, so as
to agree with what was written and signed. If it be conceded,

therefore, that the contract, as written, could not be aided by parol evidence of the Mobile classification, so as to make it a contract having the effect which the plaintiff intended, still the evidence was admissible, because it proved the plantiff's motives and intention, and they were evidence tending to prove, what was material, that the defendant did not intend to change or modify his contract, but that, on the contrary, he was led into the execution of the contract, as written, by fraud on the part of the plaintiff. For I think the effect of the words *good fair* was materially different from the word average in this contract, whether the Mobile classification could be proved in aid of the contract as written and for the purpose of giving it effect, or not. To my understanding the words "good fair" and average, in their primary signification, are not precisely the same, but that the quality indicated by the former is a shade above what the latter describes. The plaintiff, therefore, accomplished something that was material, with regard to the effect of the contract as written, and as the evidence tended to prove that this was done fraudulently, it was admissible.

Whether parol evidence of the Mobile classification is admissible in the case of a written contract for the payment or delivery of cotton, made and to be performed in the county, and having on its face no reference to that classification, or no other reference than the words "good fair," is a very important question, but it is not necessary now to decide it.

The judgment is affirmed.