# Foster *v.* Johnson.

*Statutory Detinue, by Mortgagee against Mortgagor.*

1. *Fraud in procuring execution of mortgage.*—If the mortgagor's sig-
nature to the instrument, he being illiterate and unable to read, was pro-
cured by misrepresentations as to its contents, or other fraudulent means
on the part of the mortgagee, this is fraud in the execution of the instru-
ment, and is available at law, under the plea of *non detinet*, to defeat an
action of detinue, or the corresponding statutory action, founded on the
mortgage.

2. *Form of verdict; instructions to jury as to.*—The jury have the
power to return either a general or special verdict, and the court has no
authority to control or direct their action in this particular; hence, a
charge instructing them that, if they found certain facts to be true, "their
verdict must be" in a prescribed form, which is a special verdict, is
erroneous.

3. *Error without injury in rulings on matters not decided.*—When the
verdict is for the defendant on a single issue, the rulings of the court
on other issues, though erroneous, are not available on appeal to the
plaintiff, since they could not have injured him.

APPEAL from the Circuit Court of Macon.

Tried before the Hon. JAMES E. COBB.

This action was brought by Sterling J. Foster, against Cor-
nelius Johnson, to recover a mule, "with the value of the hire
or use thereof during the detention, namely, from the 2d Oc-
tober, 1879;" and was commenced on the 16th January, 1880.
The defendant pleaded *non detinet*, and a special plea of tender,
alleging that the plaintiff claimed the mule under a mortgage,
and that the amount of the mortgage debt ($83.90) was tendered
to him before the commencement of the action. There was a
demurrer to the plea of tender, which was overruled, according
to the recitals of the bill of exceptions; and issue was then

[Foster v. Johnson.]

joined on both of the pleas. On the trial, the plaintiff read in evidence the mortgage under which he claimed the mule, accompanied with proof of its execution and registration. The mortgage was dated the 1st January, 1879, and was signed by the defendant and one Green Adair, each making his mark; purported to be given to secure the payment of a promissory note for $450, and any future advances made to them during the year, and conveyed their entire crop raised during the year, three mules, one wagon, plantation tools, &c. The note, as set out in the mortgage, was of even date with the mortgage, payable on the 1st October, 1879, signed by said Johnson and Adair jointly, each making his mark, and purported to be given for three mules, one wagon, and supplies to enable them to make a crop. One of the subscribing witnesses to the mortgage, who was the plaintiff's clerk and bookkeeper, testified, as a witness for the plaintiff, that said defendant and Adair each signed the mortgage voluntarily, in the presence of himself and the other subscribing witness, after the plaintiff had read it over to them; "that the defendant at first refused to sign it, or to make a joint mortgage with said Green Adair, because he did not wish to become responsible for a back debt of Green's; that plaintiff then told him he would not hold him responsible for said back debt; and that defendant, after going out of the store, came back in a short time, and signed the mortgage as above stated." The plaintiff, testifying as a witness for himself, stated the same facts in substance. The defendant, testifying as a witness for himself, stated, "that he could not read; that he never executed a mortgage in favor of plaintiff jointly with Green Adair, and if plaintiff had such a mortgage, it was not the one he thought he was signing; that it was not read over to him, and he did not know its contents; that he had agreed to make a mortgage to plaintiff on his crop and mule, for $75, to get advances for himself, and had positively told plaintiff that he would not make a mortgage with Green Adair, or anybody else, for he had once before made a joint mortgage with another man, and had to pay the debt;" and that no one was present when he signed the mortgage, except the plaintiff and himself. He further testified, that, on being informed during the year, by Mr. George Napier, "that plaintiff had him on a mortgage with Green Adair," he at once went to see plaintiff about it, in company with said Napier, "when plaintiff said there was nothing of it, and told him to go on home;" and said Napier, testifying as a witness for the defendant, corroborated this statement.

"The plaintiff asked the court to exclude from the jury all the evidence touching the fraudulent signing of the mortgage, on the ground that said question of fraud could not be raised

[Foster v. Johnson.]

under the plea of *non detinet*, but must be shown by a special plea setting forth the facts relied on as constituing the alleged fraud; which motion the court overruled, and the plaintiff excepted." He also reserved an exception to the charge of the court on this aspect of the case, as stated in the opinion.

It was admitted that Green Adair had delivered to the plaintiff, before the suit was commenced, the wagon and two of the mules, in part satisfaction of the mortgage debt; and the plaintiff testified that, by agreement with Adair, he took the mules, at $75 each, and the wagon at $40; while the defendant testified, that the wagon was worth $50, and the mules $125 each. The defendant admitted his liability for one-half the price of the wagon, and insisted that he was entitled to a credit on his account for that sum, the wagon having been returned. He insisted, also, that the amount due from him to plaintiff on his account, as shown by a memorandum given him by plaintiff's bookkeeper, was $83.90; and he proved a tender of this amount to plaintiff, a few days before the suit was brought, by the testimony of George Napier and Ed. Napier. The plaintiff denied this alleged tender, but stated that, on the day specified, "Ed. Napier came into his store, and counted out three hundred and ninety-odd dollars, and handed it to him, without saying what it was for, and then told him to transfer to him, said Napier, all the mortgages he held on his brother George, Cornelius Johnson, and the other hands on his brother's place; that he refused to do this, and said Napier then told him to hand him back the money, and he did so. The defendant objected to the above testimony as to the offer of said $390 and odd dollars, on the ground of irrelevancy; which objection the court sustained, and excluded the evidence, and plaintiff excepted."

The several rulings of the court on the evidence, and the charges given and excepted to, are now assigned as error.

RICE & WILEY, FOSTER, and J. D. NORMAN, for appellants.

H. C. TOMPKINS, NORMAN & WILSON, and GRAHAM & ABERCROMBIE, *contra.*

STONE, J.—One of the defenses relied on in this case is fraud, alleged to have been practiced on the defendant by the plaintiff, in procuring his signature to the mortgage, which is the title relied on for the recovery of the mule sued for. That defense is permissible in this action, and, if made out, is a complete defense to the suit. In other words, if the plaintiff, by misrepresentation of what the paper contained, or by any other fraudulent means, obtained defendant's signature to a paper he did not intend to sign, and did not know he was signing, this is

fraud in the execution of the instrument, which is available in a court of law; and, if found to exist, destroys the effect of the instrument as evidence of title.—*Swift v. Fitzhugh*, 9 Por. 39; *Morris v. Harvey*, 4 Ala. 300; *Mead v. Steger*, 5 Por. 498; *Paysant v. Ware*, 1 Ala. 160; *Dickinson v. Lewis*, 34 Ala. 638; *Davis v. Snider*, at the present term. . The jury found for defendant, and based the finding expressly on this issue.

At the request of defendant, made in writing, the court charged the jury, that if they believed, from the evidence, that the mortgage offered in evidence was procured by such fraud as is mentioned above, "then their verdict must be, 'We, the jury, find that defendant's signature to the mortgage offered in evidence was obtained by fraudulent representation of the plaintiff to the defendant, and therefore we, the jury, find for the defendant.'" The jury gave their verdict in this form. Now, this is a species of special verdict, and the jury proved by the form of their verdict that they so understood the instruction. In telling the jury that, in one supposed case, they *must* make a special finding, the Circuit Court erred. If the jury elect to put their verdict in the form of a special finding of facts, it is unquestionably their privilege to do so. But it is a mere privilege, or option, which the court has no authority to direct or control.—Cooley's Const. Lim. 321, in margin; *Underwood v. People*, 20 Amer. Rep. 633; s. c., 32 Mich. 1.

The case having been determined on the one issue—fraud in procuring the instrument to be signed—it follows that, no matter what may have been the errors committed in regard to the other grounds of defense, they were errors without injury, and furnish no cause of reversal.—*The State v. Brantley*, 27 Ala. 44. Inasmuch, however, as questions may arise on another trial, pertaining to each matter of defense, we state that Foster, the plaintiff, should have been allowed to give his full version of what is claimed as a tender. We can not know that what he offered to testify, and was excluded, would not have exerted some influence on the minds of the jury, in determining the issue of tender of the $83.90. Both transactions are claimed to have occurred on the same day, and very near each other in point of time; both relate to tenders alleged to have been made; and we think each party should have been allowed to give his own version of all that occurred on the question of tender.

The last charge given, relating to the credit claimed for the wagon returned, is scarcely full enough. If the defense narrows itself down to the question of how much Johnson owed on the mortgage debt—in other words, if the jury finds against the alleged fraud, and that the mortgage was a binding contract on Johnson—and that Johnson, by virtue of the

[Peevey v. Cabaniss.]

mortgage, owes the whole unpaid balance for advances made both to him and to Adair, the other signer of the mortgage, then there should be a credit allowed to Johnson for the entire value of the wagon, unless it had been previously allowed as a credit. On any other principle, however, if the question could become material, it would seem that Johnson, owning only a half-interest in the wagon, would be entitled to credit for only half its value. The charge should have explained the principle stated above.

Reversed and remanded.