108  132
137  426

# The Bank of Guntersville v. Webb & Butler.

*Action of Assumpsit.*

1.  *Evidence; contemporaneous words and acts admissible.*—Contemporaneous acts and conversations in reference to a transaction are admissible in evidence as part of the *res gestae.*

2.  *Contents of written agreements; when parol evidence admissible to vary; misrepresentation.*—In the absence of misrepresentation, fraud or deceit a party to a transaction is bound by the writing evidencing the agreement, though he was in fact ignorant of its contents ; but where the signature to the agreement is induced by the misrepresentation of the other party as to its contents, and the signer was ignorant thereof, he may introduce parol evidence of contemporaneous acts, declarations and conversations to show the true nature of the agreement.

3.  *Repudiation of written contract fraudulently obtained; what evidence admissible.*—Where a party in ignorance of its contents has been induced by misrepresentation to execute a written contract, evidence tending to show his repudiation of the contract, on his ascertainment of the fraud practised upon him. is admissible.

4.  *Explanatory evidence.*—Evidence which tends to explain why a party signed a written agreement without knowledge of its contents, where such signature was procured by fraud, is admissible.

5.  *Seller and purchaser of a draft; contractual relations, when not affected by subsequent payment to seller.*—The fact, that after a draft has been sold, the drawee pays a part of the money to the seller, does not alter the contractual relations between the seller and purchaser.

APPEAL from Circuit Court of Jackson.

Tried before Hon. JAMES A. BILBRO.

This was an action of assumpsit commenced on the 7th day of August, 1893, by the Bank of Guntersville, a corporation, against D. M. Webb and T. J. Butler. The complaint contained three counts, each claiming two hundred and six and 19-100 dollars. The first count claimed that sum as due by account on the 25th day of June, 1893 (?). The second was for money paid for defendants at their request by the plaintiff. The third for money loaned by plaintiff to defendants on the 25th day of June, 1892.

Defendants owned a lot of lumber.   One Alvin, as the agent of the Massengale Lumber Co., or Russell Massengale & Co., as it is otherwise called in the record, of St. Louis, agreed to purchase it.   The evidence of defendants tended to show that the price was agreed on, but they declined to part with their lumber without the money or some security ; that said Alvin referred defendants to plaintiff corporation.   The lumber was loaded on a boat, shipped to said Lumber Company and a bill of lading taken therefor, and said Alvin executed and delivered to defendants a sight draft dated June 14, 1892, on said Lumber Company for $778.75, the purchase price of said lumber.   Defendant, Butler, accompanied said lumber, as far as Guntersville, the home of plaintiff corporation, and had an interview with one Faulkner, its teller, at its place of business.   The result of the interview was, that this draft, indorsed by both defendants, was delivered with the bill of lading attached, to plaintiff.   And at the same time, said Butler received from plaintiff $200, drawing his check therefor, and also a receipt or duplicate deposit slip.   The testimony of plaintiff is, that the deposit slip read as follows :  ''Guntersville, Ala.   Deposited June 14, 1892.   Check $778.85. Dr. 1.94—776.91.   To be paid when collected.   Webb & Butler.''   When Butler was examined, the paper he produced as this deposit slip, and introduced in evidence, read as follows :  "Bank of Guntersville, Guntersville, Ala., deposited June 14, 1892, check $778.85—$1.94— $776.91.   C. H. Faulkner, Teller.   To be drawn against when paid, $776.91, credit Webb & Butler, Langston, Ala."   Butler could neither read nor write, and got one Tyler to indorse his name on draft and sign check. Neither of defendants had, up to that time, any account with said bank.   Before the plaintiff would have any dealing with said Butler, it required his identification, and evidence that he was worth more than the amount of the draft.   Plaintiff's evidence tended to show, that they received the draft for collection merely, and advanced $200 on it, taking Butler's check on it as evidence of the payment.   Defendants' evidence tended to show, that plaintiff bought the draft from them,—that the $1.94 was the discount and that the $200 was part of the purchase price, and that plaintiff agreed to pay the balance Saturday or Monday following.   The evi-

dence tended to show, that the draft was sent forward twice for collection, and not paid, and was, on June 18, 1892, protested. The protest showed notice sent to defendants, but they denied receiving notice. The draft had indorsed on it: "Drawn irregular,—lumber not yet arrived. R, M. C. Co." "Have paid shipper long since. R. M. C. Co." But by whom or when these indorsements were made is not shown. The bill of lading is not set out in the transcript, nor is it shown what disposition plaintiff made of it or the draft.

About two weeks after the lumber was shipped, and before this suit was brought, defendants received from the Lumber Company, a check for $541, which they sent to St. Louis and collected the money on. And their evidence tended to show that this money was not received "in full for the lot of lumber;" that a short time after receiving this money, they "dunned" the plaintiff for the balance, stated as $36, and plaintiff "dunned" them for the $200 paid to them, and neither paid these respective demands. Defendant Webb testified that he did not borrow any money from the bank or authorize defendant Butler to borrow any. Faulkner testified, that Butler "was informed of the contents of deposit slip when he received it. Butler testified that he was not informed of the contents of deposit slip when he received it, but was afterwards informed by Webb, who read it to him, and that in about two weeks thereafter, he called at the bank and informed its vice-president, in substance, that it was incorrect. One Morgan testified that defendants sent him to plaintiff's bank with said slip to get "some money" but when this was, is not stated.

Defendants pleaded, 1st, that they did not owe the debt; 2d, that they had paid the debt; and also three pleas of set-off each counting on the draft transaction and in substance claiming the amount of the draft less the $200 and the discount. Each averred demand, and, the last two, failure on the part of the plaintiff to return either the draft or the bill of lading.

The plaintiff requested the following charges: (1.) "If the jury believe the evidence they will find for the plaintiff." The court refused said charge and plaintiff duly excepted. (2.) "If the jury believe the evidence they should find for the plaintiff against the defendant

Butler." The court refused said charge and plaintiff duly excepted. (3.) "If the jury believe from the evidence, that the defendants retained the deposit slip after the alleged conversation with Thomasson and used it as the evidence of their demand on the bank, then they are bound by it, and the conversation would not affect the result." The court refused to give either of said charges, and the plaintiff duly excepted.

The court, at the instance of defendant, gave the following charges, to each of which the plaintiff duly excepted: (4.) "If the evidence fails to reasonably satisfy the jury, that Webb authorized Butler to borrow the $200 from the bank, or that he ratified it after he had knowledge of it, if it was brought to his knowledge, then the verdict should be for Webb notwithstanding the jury might find Butler liable." (5.). "If the bank by its agent agreed to discount this draft and pay the defendants the amount of the draft, less the discount, then the plaintiff cannot recover." (6.) "If the jury believe that the defendant, Butler, went within a reasonable time, and on his first opportunity, he saw the vice-president of the bank, Dr. Thomasson, and told him that this slip was not the agreement the bank made with him, and told him the transaction, then this was a repudiation of the paper, and the defendants' keeping the paper after this would make no difference."

There were verdict and judgment for the defendants. The plaintiff appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

LUSK & BELL, for appellant. Holding themselves out as the owners of the draft, and afterwards receiving the proceeds, the defendants are estopped from insisting that they sold the draft to plaintiff; hence the general charge for plaintiff should have been given.

All prior negotiations were merged in the written agreement evidenced by the deposit slip. 3 Brick. Dig. p. 417, §§ 156-160.

The conversation with Dr. Thomasson subsequent to the transaction was inadmissible for any purpose. 3 Brick. Dig. p. 423, §§ 248-249.

In the absence of fraud or misrepresentation, the fact that defendant Butler could not read, was irrelevant and

immaterial. *Burroughs v. Pacific Guano Co.*, 81 Ala. 255, 258.

Charge numbered 4, given at instance of defendants is clearly erroneous. *Winter v. Pool*, 100 Ala. 503.

J. E. BROWN, for appellee (no brief on file).

HARALSON, J.—This was an action of assumpsit instituted by appellant against the appellees. Exceptions were reseved by appellant to the action of the court in rulings on the evidence and in giving and refusing to give certain charges.

Defendant Butler, in testifying to what occurred between himself and the representative of the plaintiff, one Faulkner, at the time of the negotiations between them, which resulted in the delivery of the draft and the bill of lading to the bank, testified among other things, that he told Faulkner that he did not want to wait, as proposed by him, till Saturday and check on the bank for the money ; that he did not want to do such a thing as that unless he could "get it on them," (the bank ;) that he did not think the Lumber Company was safe; that he told Faulkner that he could neither read nor write ; that he did not know anything about "fixing up" matters of that sort; that Faulkner replied, that he knew all about it and would fix it up; that he "just left it all" to Faulkner and that Faulkner did not read the papers to him, &c. The witness was then asked this question : "What, if anything, did you say to him about releasing your lumber without the money? What was said on that subject?" Plaintiff objected to this question because, 1st, it was immaterial, irrelevant and illegal ; 2nd, because it called for parol evidence to vary or contradict the terms of a written contract. Certainly the first grounds of objection are untenable. It called for that which transpired, between the parties, at the time of the transaction, relative to its subject matter. It called for declarations accompanying the main fact and explanatory of it. It was therefore a part of the *res gestæ*. It was calculated to, and did elicit, evidence directly pertinent to the pleas of defendants, and to the theory of their defense, to-wit, that appellant bought the draft from them.

[The Bank of Guntersville v. Webb & Butler.]

Admitting for the sake of the argument, that the words contained in the duplicate deposit slip handed said Butler,—"To be paid when collected," or as elsewhere stated in the record,—"To be drawn against when paid,"—necessarily mean that the draft was taken for collection and not purchased, are the defendants concluded by it? Defendants' testimony tends to show that Butler could neither read nor write,—indeed this is undisputed; that he relied on Faulkner to prepare the papers according to the agreement; that the agreement was an outright purchase of the draft by appellant, and that said deposit slip was not read over to him. When one who can read and write executes or receives an instrument, he is, in the absence of misrepresentation, fraud or deceit, bound by it. And the fact that he did not read it, or was ignorant of its contents, is no defense to him. He ought to have read it, or have made proper inquiry as to its contents, and failing to do so, he must take the consequences.—*Pacific Guano Co. v. Anglin*, 82 Ala.492; *Burroughs v. Pacific Guano Co.* 81 Ala. 258; *Goetter, Weil & Co. v. Pickett*, 61 Ala. 387; *Foster v. Johnson*, 70 Ala. 249; *Campbell v. Larmon*, 84 Ala. 500; *Blum v. Mitchell*, 59 Ala. 535.

But the rule is otherwise when the execution of the instrument is obtained by a misrepresentation of its contents, and the party signs a paper he did not know he was signing, and did not really intend to sign. It is immaterial, in the latter instance, that the party signing, whether he could read or not, had the opportunity to read the paper, for he may have been prevented from doing so, or from making inquiries as to its contents, by the very fact, that he trusted to the truth of the representation made by the other party with whom he was dealing, who undertook to give the information of the contents of the paper on which the party accepting it relied and acted. *Beck & Pauli Lith. Co. v. Houppert*, 104 Ala. 503. He may show as between himself and the party with whom he dealt, what the real contract was. The court committed no error in overruling the objection.

Defendants having first introduced evidence tending to show that Dr. Thomasson was the vice-president of plaintiff corporation; that its place of business was in said Thomasson's drug store; that he at times attended

to its business, &c., then asked said witness Butler: "Now tell what Mr. Thomasson said to you about this transaction." And witness, in answer to the question, stated, among other things, that he showed Thomasson the deposit slip, and told him that Faulkner had "played off" in giving it to him; that Thomasson replied that they, the bank, had accepted the draft which bound the bank and made it safe for him and that the bank would pay him the money. The only objections made to this question by the plaintiff was, that it was "irrelevant and immaterial," and that "it seeks to vary or contradict the terms of a written contract." The first of these objections were certainly not well taken. The evidence was not irrelevant and immaterial. The last objection raised, that "it seeks to vary or contradict the terms of a written contract," was a good objection.

But the evidence was admissible notwithstanding, as tending to show, that defendant Butler when he ascertained the alleged fraud that had been practiced on him, made the fact known to this officer of the bank and repudiated the transaction, who assured him it was all right.

In response to the question, "what did Faulkner tell you last summer about whether the draft had been paid or not?" propounded by defendants to said Butler, he answered; "He (Faulkner) said that the bank had made him pay it; that it was on the books and they, the bank, made him pay it." Plaintiff objected to this question and moved to exclude the answer, because it was immaterial, irrelevant and incompetent. This objection was well taken, and the court erred in not excluding the answer. It was at best, the mere unsworn statement of Faulkner, and was therefore hearsay and incompetent.

The court committed no error in allowing defendant Butler to testify, that he had not sufficient education to read the deposit slip. It tended to explain his action in receiving it. Nor was it improper in the court to allow said witness to testify, that he first learned of the contents of the slip at Webb's house. There was evidence by this witness, called out on cross-examination by defendants, tending to show, that Webb first informed him of the contents of the slip. And it was permissible for

defendants to show not only when, but where this information was obtained.

There was no error in refusing charges one and two, asked by plaintiff. There was conflict in the testimony and these were charges on the effect of the evidence.

Charge No. 3 asked by plaintiff, was properly refused. The deposit slip, mentioned in the charge, contained other things besides the words, "To be drawn against when paid," or as deposed by Faulkner, "To be paid when collected." It was, even, according to plaintiff's version of the transaction, a receipt for the draft; and in either view, the defendants were under no obligation to return it to plaintiff.

The charge is also further faulty in assuming, that if the defendants used the slip as evidence of their demand on the bank, it necessarily follows, that they are committed to the truth of that part of it, which tends to show that the bank took the draft for collection merely; whereas it was possible for defendants to have retained the slip, to be used as evidence in so far as it spoke the truth (as they understood it) and no further. The charge is also calculated to mislead the jury. The term, "Used it as evidence" is too indefinite. For aught appearing that term might have related to the introduction of the slip in evidence on the trial.

There was evidence tending to show that Webb & Butler were partners. Charge 4, therefore, should have been refused.

Charge 5, was properly given. The objection urged to it by appellant's counsel is, that it ignored what transpired subsequent to the time when the draft was placed in the hands of the bank. The evidence does tend to show, that subsequent to that time, defendants received from the Lumber Company $541. We do not think this affects the propriety of the charge. Receiving the $541, from the Lumber Company might have some weight as tending to show, that the original transaction was a deposit for collection merely, and not a sale of the draft. But the postulate of the charge is a sale of the draft. If there was a sale of the draft the fact that the defendants received from a third person, or the Lumber Company, a certain sum of money, even though they received it in payment, *pro tanto* of the purchase price of the draft, would not, of itself, alter the contractual re-

[Parker v. Bluffton Car Wheel Co. *et al.*]

lations between the plaintiff and defendants. Nor would it, of itself, abridge any right as holder of the draft which the plaintiff may have held against the Lumber Company. The plaintiff, as far as the evidence shows, still held the draft, with the bill of lading attached. Defendants are not sued as indorsers of the draft: that is not the theory of plaintiff's case. Their suit is to recover the two hundred dollars loaned by them to defendants.

Without the words, "on his first opportunity," charge No. 6, given for defendants, might have been objectionable as referring to the jury, the question of what was "reasonable time," but, with the added words, "and on his first opportunity," that vice is taken away, and altogether, the charge is free from error.

For the error pointed out, the judgment of the circuit court is reversed and the cause remanded.

Reversed and remanded.