# Prestwood *v.* Carlton.

*Action for Breach of Covenant.*

(Decided June 10, 1909. 50 South. 254.)

1. *Lease; Validity; Fraud and Misrepresentation.*—It is a fraud that is available in a court of law for a grantee or lessee to obtain the signature of the grantor or lessor to a lease or grant by misrepresentations of what the lease or grant contains, if the grantee did not intend to sign it and did not know what he was signing.

2. *Contracts; Ignorance of Contents.*—In the absence of fraud or misrepresentation one who has executed a written contract in ignorance of its contents, cannot set up his ignorance to avoid the obligation as the duty was on him to read the instrument or have it read to him; but if the execution is procured by misrepresentation

made by the other party as to its contents such misrepresentation may furnish a defense to an action at law based on the contract.

3. *Same; Validity; Misrepresentation.*—It is a fraud to affirm as true that which is untrue although not known to be so, and one who is negotiating a trade must not recklessly or innocently assert as a fact that which is untrue, if such asserted fact be an inducement to the other party to enter into the trade.

4. *Landlord and Tenant; Covenant of Title; Breach; Defense.*— Where the action was for breach of covenant of warranty in a lease for want of title in the lessor to a part of the premises, a plea setting up that if there was want of title in the defendant, the error was due to the negligence or fraud of the lessee in failing to get the correct numbers, or in giving an improper description of the land; that defendant signed the conveyance relying on the representations made by the lessee that the lease described his lands and only his lands, and that if there was any errors, it was the fault of the lessee and not of the defendant, states a good defense.

5. *Estoppel; Misrepresentation to Procure Lease.*—If one intends to lease property and undertakes to procure a correct description of the same and misrepresents the same to the lessor, and by such means procures a lease of property not owned by the lessor, such an one is estopped to dispute his lessor's title by an action for a breach of covenant.

6. *Same; Action for Breach; Plea.*—A plea setting up that the lessee undertook to get a description of the premises, that the lessor did not even know the description by numbers, and that he relied on the representations of the lessee, is sufficient as a defense to an action for a breach of covenant of warranty in the lease for want of title to part of the premises in the lessor, although it did not aver that defendant was prevented from reading the lease, and did not negative the fact that he read it.

7. *Same.*—As a defense to an action for breach of covenant of warranty in a lease for want of title in the lessor to part of the premises a plea which alleges fraud and misrepresentation in the lessee, but asks no affirmative relief, is sufficient without offering to return the consideration, or to place the plaintiff in statu quo, although it did not allege the nature and extent of plaintiff's damages.

8. *Same; Mistake.*—Where land not owned by the lessor was included in a lease through the mutual mistake of both parties thereto, there was no breach of covenant for want of title to such lands: this is especially true where the error resulted from the lessee's fault.

9. *Same; Variance.*—Where the action was for breach of covenant of warranty in the lease, the defendant could not show that he leased the land under a parol agreement with the owner thereof, under a plea alleging that such land was included through the fraud and misrepresentation of the lessee.

10. *Same; Damages for Breach.*—In an action for breach of covenant by the lessor, the lessee is entitled to recover the difference between the rent reserved and the value of the use of the premises for the time, together with all damages which are a direct proximate and natural result and consequence of the breach, if such damages can be certainly and correctly estimated from reliable data.

[Prestwood v. Carlton.]

11. *Covenants; Breach; Vendor and Purchaser.*—In an action for breach of covenant against the vendor of land the vendee can recover only the amount of payments made together with the interest and costs.

12. *Pleading; Verification.*—A plea as an answer to an action for breach of covenant in a lease which alleges only matter of fraud or estoppel on the part of the lessee and makes no attempt to deny the execution of the lease, need not be verified.

13. *Appeal and Error; Assignment; Necessity.*—Though exceptions were reserved to the striking out of a part of the answers to interrogatories propounded by plaintiff, yet if there are no assignments of error based thereon the same will not be reviewed for the purpose of reversal, but only to aid in another trial.

14. *Discovery; Statutory Provision; Answers.*—Interrogatories taken under the statute are governed by the same rules as answers of bills of discovery, and nothing can be considered impertinent which tends to disprove the existence of the cause of action; therefore, a party in answering may accompany his admission of particular facts called for, by a statement of additional facts in avoidance thereof, and his answers cannot be stricken solely because not being strictly responsive.

15. *Frauds; Statute of; Void Agreement.*—Parol authority to lease lands is absolutely void under the statute of frauds, and evidence thereof is inadmissible to support the lease.

16. *Damages; Reparation.*—The general rule of damages is to give compensation for the loss sustained and to put the party in as nearly the same condition as he would have been had the contract been performed, and the primary object is compensation for the natural and proximate result of the wrong.

APPEAL from Covington Circuit Court.

Heard before Hon. H. A. PEARCE.

J. B. Carlton as administrator sued J. A. Prestwood for breach of a covenant of warranty in a lease. Judgment for plaintiff and defendant appeals. Reversed and remanded.

FOSTER, SAMFORD & PRESTWOOD, and STALLINGS & REID, for appellant. It is too certain for argument that a plea of fraud need not be sworn to. A party making a contract who relies upon representations of the other party which are false may avoid the contract, although he did not read it.—*Folmar v. Siler,* 132 Ala. 297. When fraud is alleged in connection with the contract, the person defrauded has one of two rights. 1st, he may re-

scind the contract when he discoveres the fraud, if the party can be put in statu quo, or 2nd, may rely upon the fraud as a matter of defense to the action when sued on the contract.—*Huckabee v. Albritton*, 10 Ala. 657; *Thweatt v. McLeod*, 56 Ala. 375; *Joseph v. Seward*, 91 Ala. 597. The statute of frauds is a personal defense not available to a stranger to the agreement.—*Gafford v. Stone*, 51 Ala. 444; *Baynes v. Wells*, 107 Ala. 562; *Newbern v. Bass*, 82 Ala. 622; *Shakespeare v. Alba*, 76 Ala. 351. The measure of damages is the difference between the contract price and the market value of the lease at the time of the breach for the term of the lease. —*Snodgrass v. Reynolds*, 79 Ala. 452; *Chestnutt v. Tyson*, 118 Ala. 389. There could not be a recovery without an eviction by a person holding the paramount title, since the warranty sued on is in effect a general one for quiet enjoyment.—*Gunter v. Williams*, 40 Ala. 561; *Copeland v. McAdory*, 100 Ala. 559; 8 A. & E. Ency. of Law 98.

HENRY OPP, and POWELL, ALBRITTON & ALBRITTON, for appellee.—The court properly sustained demurrer to plea 3.—*Young v. Arntz*, 86 Ala. 116. Counsel discuss other assignments of error, but without citation of authority.

MAYFIELD, J.—This action was brought for the breach of covenants of warranty contained in a lease of certain lands for turpentine purposes. The lease is set out in the complaint, and the various breaches assigned in each count are, in substance, that the covenant was broken, in that the lessor had no title to certain lands leased, but that such lands at the time of the lease were owned and possessed by other named parties than the lessor. No question is raised on this appeal as to the

[Prestwood v. Carlton.]

sufficiency of the complaint. The complaint contained 10 counts, each assigning a breach because of want of title and the possession on the part of the lessor, each count alleging title to certain parts of the lands leased to be in separate and distinct parties. To this complaint defendant filed five pleas, only one of which need be considered on this appeal because the sufficiency of the others is not raised, or, if raised, were decided in favor of appellant. This one plea to be considered on this appeal is plea No. 3, the sufficiency of which was tested by demurrer thereto, and was decided against the appellant, in that there was a judgment sustaining the demurer as to this plea which raised one of the material questions to be decided. The second, third, and seventh assignments of error each raises substantially the same point of law, which is this: Whether or not a verbal agreement between the defendant and one McIntosh, the alleged owner and possessor of the lands at the time of the lease, by which McIntosh agreed for the defendant to lease his lands for turpentine purposes, is a defense to this action. The fourth, sixth, eighth, tenth, eleventh, and twenty-first assignments of error all relate to the proper measure of damages in this action, and the thirteenth, fourteenth, seventeenth, eighteenth, and nineteenth assignments of error relate to the general affirmative charge requested by the defendant on the several counts of the complaint. The charge that the defendant cannot recover on the first, eighth, ninth, or tenth counts is not insisted upon. The twenty-third assignment of error relates solely to the refusal of the court to set aside the judgment, and grant a new trial for the defendant. It is not necessary to discuss in this opinion or to decide as to whether or not there was error as to each one of the separate assignments.

There are a few general propositions of law involved on this appeal, and a correct decision of these will sufficiently point out or pass upon the correctness or incorrectness of the rulings of the trial court as to the several assignments of error. The first of these questions of law is this: "Whether or not the misrepresentations of the vendee or lessee at the time of executing a lease, which is in writing and under seal, as to the description of the premises to be leased, and which representations are relied upon by the lessor or grantor, are available in an action at law for the breach of covenant in the lease because of want of title or want of possession on the part of the vendor at the time of the execution of the lease. If the grantee or the lessee by misrepresentations of what the grant or lease contains obtains the grantor's signature to the grant or lease which he did not intend to sign, and did not know he was signing, this is a fraud which is available in a court of law.—*Foster v. Johnson,* 70 Ala. 249; *Davis v. Snider,* 70 Ala. 315; *Shelby Iron Co. v. Ridley,* 135 Ala. 513, 33 South. 331; *Pinckard v. American Mortgage Co.,* 143 Ala. 571, 39 South. 350. Yet, if a party signs an instrument without reading it or having it read to him if he cannot read, he cannot avoid it because not informed of its contents, unless there be fraud, deceit, or misrepresentations practiced upon him in the execution thereof. Ignorance of its contents in such case the law attributes to his own negligence.—*Pacific Guano Co. v. Anglin,* 82 Ala. 492, 1 South. 852; *Burroughs v. Pac. Guano Co.,* 81 Ala. 255, 1 South. 212; *Beck & Pauli Co. v. Houppert & Worcester,* 104 Ala. 503, 16 South. 522, 53 Am. St. Rep. 77; *Bank of Guntersville v. Webb & Butler,* 108 Ala. 132, 19 South. 14. But if the execution of any written instrument, such as a lease, deed, or mortgage, is obtained from the grantor by a misrepresentation of its contents

made by the grantee or lessee, the grantor not knowing what he is signing and not intending to sign such a document, then the ignorance of the contents is not attributable to the party signing by a failure to read, or to have it read to him, because the natural effect of the misrepresentations in such case may have been to prevent him from so reading it or having it read. He may have trusted to the truth of the representations made by the other party with whom he was dealing.—Authorities supra. To state the proposition in different language: One who has executed a written contract in ignorance of its contents cannot set up his ignorance to avoid the obligation in the absence of fraud or misrepresentations. If he cannot read, it is his duty to have the instrument read to him; but, if the execution of such contract by him was procured by misrepresentations on the part of the other party of its contents, such misrepresentations may be such a fraud as will furnish a defense in an action at law, based upon such contract, when brought by the party making the misrepresentations.—*Cannon v. Lindsey*, 85 Ala. 198, 3 South. 676, 7 Am. St. Rep. 38; *Bates v. Harte*, 124 Ala. 427, 26 South. 898, 82 Am. St. Rep. 186. Judge Brickell has stated the proposition as follows in the case of *Tillis & O'Neal v. Austin*, 117 Ala. 263, 22 South. 975: "When the execution of an instrument which the party signing did not intend to sign and did not know he was signing is procured by a misrepresentation of its contents, and the party signing it does so without reading or having it read, relying upon such misrepresentation and fraud and believing he is signing a different instrument, he can avoid the effect of his signature notwithstanding he was able to read, and had the opportunity to read the instrument." [1] The law imposes the duty of ascertaining the truth of statements made in transactions as to material matters, and re-

[Prestwood v. Carlton.]

quires that, if the statements are false, they shall be made good, and that the party shall not take advantage of his own wrong.—*Jordan v. Pickett,* 78 Ala. 331. One who is negotiating a trade must not recklessly or even innocently assert that as a fact which is untrue if such asserted fact be to any extent an inducement to the other party to enter into the contract. Honest belief in the truth of the statement of such fact, while it exculpates from moral fault, does not relieve from the legal liability to make it good.—*Jordan v. Pickett,* 78 Ala. 331; *Ball v. Farley,* 81 Ala. 288, 1 South. 253. It is as much a fraud to affirm as true that which is untrue, though not known to be so, as it is to assert what is untrue and known to be so.—*Jordan v. Pickett,* 78 Ala. 331.

Plea No. 3, if the facts therein stated be true (and on demurrer the facts alleged must be taken as true), presented a complete defense to the plaintiff's entire action. The plea was as follows: "(3) For further special plea to the complaint defendant says: That his signature was obtained to the contract sued upon by a statement of such facts and under such circumstances as constitute fraud in law. That such circumstances are as follows, to wit: The plaintiff's intestate applied to defendant prior to the execution of the contract sued upon for the execution by the defendant to the plaintiff's intestate of such a contract as the one which he executed, and which is sued upon, and plaintiff's intestate and defendant had a verbal agreement as to the terms of the lease, whereby defendant agreed to execute to the plaintiff's intestate a lease upon his (defendant's) lands. Defendant thereupon told plaintiff's intestate that he (defendant) did not know the description of his lands by their numbers, and plaintiff's intestate agreed with defendant that plaintiff's intestate go to the courthouse, and to the tax books where defendant's lands were as-

[Prestwood v. Carlton.]

sessed to him, and ascertain the numbers of the defendant's lands and the correct description thereof, and defendant relied upon plaintiff's intestate to ascertain the correct description of the lands of defendant which had been agreed to be leased by defendant to the plaintiff's intestate. Plaintiff's intestate thereupon went to the courthouse, and afterwards returned to defendant with a description of a large amount of land, and told defendant that the same described defendant's lands, and defendant did not know whether said description was a correct description of defendant's lands or not, but defendant relied upon the statement to that effect by the plaintiff's intestate and acted thereon, and plaintiff's intestate wrote out the contract sued upon, and inserted the numbers of the land therein, and presented the same to defendant, stating that the same described only the lands of defendant, and defendant, not knowing any better, but relying upon said statement of plaintiff, executed the contract sued upon, and defendant says that if said contract embraces lands not owned by defendant, as alleged in the bill of complaint, to that extent said statement of said plaintiff's intestate that said description only described the lands of the defendant was false, and therefore to that extent said contract is not binding upon this defendant for the false statement of said plaintiff's intestate, wherefore defendant prays the judgment of the court upon this plea."

The breach alleged in the complaint is a want of title and possession on the part of the grantor at the time of the lease to a part of the premises described in the lease. The plea in substance and in effect alleges that, if there was such want of title or possession in the defendant at the time of the lease to any part of the premises as is alleged in the complaint, it was the result of a fraud on the part of plaintiff's intestate; in short, the plea shows.

that, if there was a want of title in the defendant to the
lands conveyed, it was due to the negligence or fraud
of plaintiff's intestate in failing to get the correct num-
bers, or in getting improper description of the lands;
that the defendant signed the conveyance relying upon
the representations of plaintiff's intestate that it did
describe his lands, and only his lands, and, if it describ-
ed or conveyed timber or rights or lands not owned by
him, it was the fault of plaintiff's intestate, and not
of this defendant. To state a similar case concisely and
abstractly, it is this: If A. applies to B, to purchase the
latter's lands, and B agrees to sell, but replies that he
does not know the description of his land, and A, replies
that he does, or can ascertain it, and he writes out a con-
veyance representing to B that it describes B's land, and
B, signs it relying upon this statement as to the descrip-
tion, and it afterwards develops that it describes C.'s
land, and A, sues B, for a breach of covenant because
he had no title to the lands described, certainly B should
be allowed to show on that trial that if there was a
breach, as alleged, it was due to the negligence or fraud
of A in describing the lands conveyed. The fraud al-
leged in said plea and as appears from the whole evi-
dence shown by the record was a constructive fraud as
distinguished from an active fraud; that is to say, it
does not appear that it was an intentional fraud on
the part of plaintiff's intestate, but that the description
was an error or mistake the result of his negligence or
lack of information in describing defendant's lands and
the ones intended to be conveyed; but defendant relied
upon this representation and acted upon it, and it would
certainly be a fraud upon the rights of defendant to al-
low plaintiff's intestate to profit by his own wrong, how-
ever, innocently it may have been made. In other words,
the plea shows facts which would have estopped plain-

[Prestwood v. Carlton.]

tiff's intestate from disputing that the defendant own-
ed the land as alleged, as much so as defendant's cove-
nants of warranty, in the absence of such representa-
tions, would estop him from denying that he owned the
land. One is an estoppel in pais and the other is an es-
toppel by deed. It is insisted by counsel for appellee that
the plea was defective because it did not aver that the de-
fendant was prevented from reading the lease, and be-
cause it did not negative the fact that he did read it.
This was not necessary, for the reason the plea shows
that the grantee undertook to get the description, and
that the grantor did not even know the description by
numbers, and consequently would have been no better
informed after reading the description, which is by gov-
ernment numbers, than if he had not read it. The gran-
tee undertook to get the correct description of the de-
fendant's lands from the books in the courthouse, and
stated that he had gotten it, and that it correctly de-
scribed only the land of defendant. It is possible that
a person might know the correct description of his own
land by seeing the government numbers thereof only,
but certainly very few people would be able to do so
where there was as large a quantity of land as
was described in this lease. The point is that
the lessee undertook to describe the defendant's
lands, went to the books from which to get the
data, and returned, saying he had the descrip-
tion, prepared the description himself, and told
the grantor that it was correct. If the description was
erroneous and described other lands, certainly he should
not be enabled to profit thereby, though it be an honest
mistake, and though the grantor could have ascertained
the correct numbers if he had undertaken so to do; but
the plea alleges that he did not undertake to describe
them, that it was the grantee who undertook to describe
them and did describe them. Counsel for appellee also

[Prestwood v. Carlton.]

insist that the plea was bad for that it was in effect an attempt to rescind the contract because of fraud without offering to pay back the purchase price or to place the other party in statu quo; and they further urge that the plea is bad for that, if it is a plea attempting to claim damages because of fraud, it should allege the nature and extent of the damages. The answer to this is that the plea does not invoke any affirmative relief—that is, in asking a rescission of the contract—nor does it claim damages by reason of the fraud, but it simply sets up the facts and matters alleged therein as a defense to the action brought and in avoidance of the breach of covenants alleged. The plea does not undertake either to affirm or deny the contract or lease upon which the action is based, but only asserts that, if there was a breach as alleged, it was the result of the fault and fraud of the plaintiff's intestate, and not of the defendant. If the facts alleged in the plea are true, it was not necessary for the plea to allege whether the defendant owned or did not own the lands described, nor was it necessary for him to separate the lands owned by him from those not owned by him. If the lease described other lands than those intended to be embraced therein, either party could have had the lease reformed so as to describe the lands intended, or it might authorize either party to rescind this lease and to specifically enforce the contract to lease the lands agreed upon. Though as to this we do not decide, yet we do decide that neither one of these remedies in equity would prevent a defense at law in an action, based on the contract, by the party responsible for the erroneous description. There is no case presented to authorize an election to rescind the contract in toto, or to affirm and claim damages for fraud. All that is necessary for this plea to do, and which we hold that it does, is to set up a state of facts which, if true, would

[Prestwood v. Carlton.]

be a bar to the cause of action alleged in the complaint. There is no attempt in this plea to deny the execution of the lease, but only to show matters of fraud or of estoppel on the part of plaintiff's intestate to maintain this action, in which case there is, of course, no necessity of having the plea verified by affidavit. In short, the plea alleges that, if there has been a breach of the covenants in the lease as alleged in the complaint, it was the result and consequence of the act of plaintiff's intestate, and not that of defendant. No person should be allowed to profit by his own wrong; consequently it was error in the trial court to sustain demurrer to this plea. It clearly appears from this plea, and from the evidence shown by this record, that whatever breach there was of the covenants of lease it was the result of the mistake of description, and the plea alleged that the error was due to the negligence of plaintiff's intestate, and not of himself. If the mistake in the description of the lands intended to be conveyed was due to the mutual mistake of both parties thereto, there would be no breach of covenant for want of title as to the lands described in the lease by mutual mistake; that is to say, the covenants would not be broken by reason of such mistake. Tyson, C. J., speaking of this question in the case of *Pinckard v. American Mortgage Co.*, 143 Ala. 571, 39 South. 350, said: "If the parcel of land was put into the deed by mutual mistake of the parties, the covenants were never broken." If this be true, certainly the covenants were not broken so as to be actionable by the lessor when the error of description was the result of his own fault. This being true, it would also be error to sustain objections to or to exclude evidence to prove the facts stated in said plea, if the evidence be otherwise competent. While there are no assignments of error as to striking certain parts of defendant's answer to the interrogatories propounded to

him by the plaintiff under the statute, the exceptions were reserved, and consequently we do not consider the same here except for the purpose of aiding in another trial, if such should be had. A demurrer having been sustained to the third plea, which set up facts substantially the same as those contained in that part of the answer stricken, of course, such evidence could not be material under the issues in the case; but the court being in error as we have pointed out, in sustaining demurrer to this plea, this evidence would be material and proper with the facts stated in that plea being in issue. The bill of exceptions recites that the motions to strike this portion of defendant's answers were made upon the ground that the same was not responsive to the interrogatory, and was not pertinent to the issue. While it may not be strictly responsive to the question or interrogatory, and may not have been pertinent to any issue, after demurrer was sustained to the third plea, but for the purpose of another trial, it is proper for us to say that at least a part of the matter stricken upon the motion of the plaintiff was pertinent, that part which was the same in substance as the facts stated in the plea, and, if the matter was pertinent, it cannot be stricken because not responsive to interrogatories propounded under the statute. If this had been an interrogatory propounded to a witness or even to the defendant as a witness, it may be said that part of the answer stricken was not responsive to the interrogatory. For that reason alone it might be stricken, but the rule is different when the deposition is taken under the statute, which is a mere examination of the parties by interrogatories. Answers to interrogatories taken under this statute are governed by the same rules that are applicable to answers to bills of discovery in chancery so far as respects the nature of the discovery sought and the

[Prestwood v. Carlton.]

effect of the answer as evidence, and in answers to such bills nothing can be considered impertinent which tends to disprove the existence of the cause of action, and consequently an answer to an interrogatory under the statute whether it is purely responsive or contains affirmative irresponsive allegations in avoidance of the demand, can not be made the subject-matter of exceptions. Consequently a party answering interrogatories may accompany his admission of particular facts called for by the interrogatory with a statement of additional facts in avoidance of them. A party is not in his answer to interrogatories propounded to him under the statute bound to confine himself to a simple admission or denial of the facts thus sought to be elicited. He has the right to confess and avoid, and consequently answers or parts thereof cannot be stricken solely because they are not strictly responsive to the interrogatory. If pertinent and tending to prove or disprove the issues of the case, they cannot be stricken. A party cannot by an examination of his adversary under this statute elicit that, and that only, which he desires, and exclude that he does not desire, by making an answer of that which he does not desire not responsive to the interrogatory. The party answering his adversary's interrogatories is required to answer them fully, and as a part of his answer to any interrogatory he may state the whole of a transaction, even though a part only is asked by the interrogatory. Being required to admit and confess by this form of a bill in the nature of one for discovery, he may also avoid as well as confess, and his answers avoiding plaintiff's cause of action should not be excluded because not strictly responsive.

There was no error in excluding the evidence of the defendant and of the witness McIntosh to the effect that the defendant and McIntosh had a parol agreement by

[Prestwood v. Carlton.]

which the defendant was authorized to lease the lands of McIntosh for turpentine purposes. We fail to discover how this evidence could be pertinent to any issue. Such agreement, if made, would be absolutely void under the statute of frauds; that is to say, it was not binding upon either one of the parties, and, had it been executed by the defendant leasing the lands in writing, the lease would still be void because of want of authority in writing on the part of the defendant to execute the lease, and consequently, if it had appeared that this lease was an attempt on the part of the defendant to execute a lease to plaintiff's intestate on McIntosh's land under this agreement, the lease would have been void as to such lands. Such evidence was clearly not admissible, and was properly excluded by the court for another reason which appears beyond doubt from the record in this case, to wit, that there was no attempt on the part of the defendant to lease the lands of McIntosh. He only agreed to lease his own lands and by mistake or error he executed a lease upon the lands of McIntosh, and certainly he should not be allowed to say at one time and in one breath that he leased or intended to lease only his own lands, and then in the next breath say that he leased the lands of McIntosh under a parol agreement which is absolutely void under the express terms of the statute. Such evidence was not admissible whether contracts in violation of the statute of frauds are absolutely void, or whether merely voidable. It is to be regretted that the decisions of this court at this time are in conflict upon this question; some of the decisions holding that contracts in violation of the statute of frauds are absolutely void and mere nullities, while others hold that they are merely voidable, and not void. The decisions of this court prior to Code 1852, § 1551, uniformly, and unquestionably correctly, held that such contracts were only

voidable and not void under the statute as it existed prior to the Code of 1852, but the language of the statute was entirely changed by the Code of 1852, and in consequence of which there was a change in the decisions of this court. The former decisions were pronounced when the statute pursued the words of the English statute of frauds, which statute did not declare verbal agreements for the sale of lands void, but merely declared that no action could be supported on them.—See Clay's Digest, p. 254, § 1. The construction placed upon such statute by this court and by the English courts and by the courts of other states, so far as we have examined, were to the effect that the statute did not render such agreements absolutely void, but merely voidable; that the statute applied to and affected only the evidence necessary to prove the contract; that the statute in such cases merely required the evidence to be in writing, whereas at common law it was satisfied by parol evidence.—*Gillespie v. Battle,* 15 Ala. 276. But the statute now, and as it has always appeared since the Code of 1852, in express terms declares such contracts and agreements to be void unless in writing, expressing the consideration and signed by the party to be charged, etc. This change of the statute and the necessary change of decisions construing it were expressly pointed out by Chief Justice Brickell in the case of *Flinn v. Barber,* 64 Ala. 193, in which case he held that verbal contracts as to lands could not be enforced unless the statute was violated, that such contracts were absolutely void, and that contracts which were void by express statutory declaration must be mere nullities, must be without any legal effect, incapable of conferring any right or of imposing any duty, following and quoting the case of *Scott v. Bush,* 26 Mich. 418, 12 Am. Rep. 311. This case of *Flinn v. Barber,* 64 Ala. 193, was subsequently quoted from and cited by Coleman, J.,

in the case of *Nelson v. Shelby Mfg. Co.*, 96 Ala. 515, 526, 11 South. 695, 699, 38 Am. St. Rep. 116. While the learned judge in some respects explains this case, he announces the same rule declared by Chief Justice Brickell, and then again in the same case announces the contrary rule held by the other line of Alabama cases. (This apparent conflict may be explained; to which we will refer later.) In this case the judge, in referring to a case in which a vendee had done nothing more towards complying with the statute than to pay a part of the purchase money, says: "In such case neither party is bound and the contract is void by the very terms of the statute itself. A contract void under the statute of frauds, is void for all purposes." And on page 528 of 96 Ala., page 700 of 11 South. (38 Am. Rep. 116), the judge says: "Parol evidence is not admissible to render valid undertakings which are void by reason of the statute of frauds. To permit parol evidence to be introduced to supply the omission would break down the safeguard intended to be secured by statute in all contracts for the sale of lands."—while at the bottom of page 529 of 96 Ala., page 700 of 11 South. (38 Am. St. Rep. 116), he says: "The authorities are almost uniform to the effect that contracts for the sale of land, although they contravene the statute of frauds, are not strictly void, and, to avoid a contract on the ground that it is offensive to the statute of frauds, it must be specially pleaded. If waived and the contract is proved, it will be enforced." There are other Alabama cases citing and criticising the case of *Flinn v. Barber*, 64 Ala. 193, but none expressly overrule it.

On the other line of cases Somerville, J., in the case of *Shakespeare v. Alba*, 76 Ala. 355, referring to the rule of pleading and practice that the benefit of the statute of frauds is not available without being specially plead-

[Prestwood v. Carlton.]

ed, and, if waived and the contract is admitted or satis-
factorily proven, it will be enforced, used the following
language: "Our most recent rulings hold that such
agreements therefore are not strictly void, but voida-
ble merely"—citing *Cooper v. Hornsby,* 71 Ala. 62, and
*Comer v. Sheehan,* 74 Ala. 452. In this the learned
judge evidently referred to the rule of pleading and
practice as to the statute of frauds, and not strictly to
the validity or invalidity of contracts in violation of
the statute, for the cases cited by him only go to the
question as to whether or not it must be specially plead-
ed. It will be observed and found from an examination
of all of these cases that the decision of Brickell, Chief
Justice, in 64 Ala. 193, has never been expressly over-
ruled, and that it is the only case which specifically
points out the change of the language of the statute
which justifies the change of the decisions; that is, that
the statute of frauds as it appeared prior to the Code of
1852 only prevented an action for enforcing it and pre-
vented parol evidence to prove such contracts, while the
statute as it appeared since the Code of 1852 expressly
declares all such contracts in violation of the statute to
be void. This distinction is also pointed out by the text-
book writers on the subject of the statute of frauds. The
doctrine is announced in 20 Cyc. p. 279, as follows:
"Under the original statute of frauds and statutes like
in form, an oral contract falling within its scope is not
void but is simply incapable of sustaining an action to
enforce it. The statute does not as a rule apply to the
contract, unless it is the foundation of the cause of ac-
tion or an affirmative defense. If it comes in question
only collaterally, the contract may be relied on and
proven. In those states, however, in which the statute
declares contracts within its terms to be void, it would
seem that such contracts are of no effect whatever"—

citing *Madigan v. Walsh,* 22 Wis. 501; *Culligan v. Wing-
erter,* 57 Mo. 241. The same distinction is made in the
same book (page 284), holding if the statute expressly
declares that the contract shall be void it has no validity
whatever—citing *Pierce v. Clarke,* 71 Minn. 114, 73 N.
W. 522, and authorities supra. Notwithstanding these
cases, there is an unbroken line of decisions in this state
to the effect that the benefit of the statute is not avail-
able without its being specially pleaded, and, if waived
and the contract is admitted or satisfactorily proved, it
will be enforced, extending from the case of *Carter v.
Fischer,* 127 Ala. 52, 28 South. 376, to that of *Patterson
v. Ware,* 10 Ala. 445. There is also a line of cases that
a stranger to the contract or transaction cannot plead
or raise the question of the statute of frauds in avoidance
of the contract.—*Bain v. Wells,* 107 Ala. 562, 19 South.
774; *Cooper v. Hornsby,* 71 Ala. 62; *Shakespeare v. Al-
ba,* 76 Ala. 351; *Mewburne's Heirs v. Bass,* 82 Ala. 622,
2 South. 520. There is another line of cases holding
that, if a defect by reason of the statute of frauds af-
firmatively appears upon the pleading, advantage may be
taken by demurrer.—*Strouse v. Elting,* 110 Ala. 132,
20 South. 123, and cases cited.

We will not attempt in this opinion to reconcile the
apparent conflict in the authorities on this question, be-
cause it is not necessary to the correct decision of this
cause, for the reason that the evidence offered by the
plaintiff to prove the oral agreement between him and
the third party to lease the lands of the third party
would not be admissible under any line of the decisions
nor for any purposes, especially not so in this particu-
lar case where it conclusively appears that there was no
intention to lease the lands of such third party, and
when this comes from the mouth of the defendant him-
self. This apparent conflict, however, may be explained

[Prestwood v. Carlton.]

upon the theory that the line of cases holding the contract in violation of the statute to be absolutely void and mere nullity were decisions which were construing the contract itself, whereas the other line of cases holding such contracts to be voidable merely, and not void, were cases in which the question before the court in each case was a question of pleading and practice, and was not necessarily a construction of the contract; but as to this we do not decide, for the reason that it would be a dictum, if we so decided, in the same manner that it was a dictum in those cases which held that the contract was voidable merely, and not void.

The next question of importance to be decided in this case relates to the proper measure of damages for the breach of covenant in leases of this character. The measure of damages for the breach of covenants to lease, or of contracts and covenants with relation thereto, seems to be the rental value of the lease, and not profits; but profits may be recovered also when they are an element of the contract, though such profits must never be speculative, or conjectural, or incapable of estimation, for the reason that such damages cannot be estimated with reasonable certainty; but, if profits constitute the basis of the legitimate value of the use of lands leased, such profits must be an element of the contract of lease, and must be established by data from which the amount can be ascertained with reasonable certainty. A breach of covenant for peaceable possession or to give possession is the value of the lease or of the unexpired term in case there was occupation for a part of the term, less the unpaid rent, and not profits which the tenant would have made had he not been disturbed in his occupancy. Profits are recoverable as damages if they are the proximate and not the remote result of the breach of the contract. They are, however, frequently speculative, conjectural,

[Prestwood v. Carlton.]

and uncertain not only as to the amount, but also as to whether or not any at all could be realized, or when they depend upon the intervention of other agencies than the contract in question. In such cases they are never recoverable. Whether profits are proximate or remote, and whether within the contemplation of the parties at the time of the contract, and whether speculative and uncertain, or depend upon the intervention of other agencies than the contract, often depends upon the question whether or not such profits arise directly out of the contract or its subject-matter, or whether they constitute the immediate fruits of the contract, or whether they result from collateral engagements or enterprises besides the contract itself, or whether they depend upon the chances of business or upon contingencies. If profits are the immediate fruits of the contract, arise directly from it without the aid of other agencies and be not dependent upon chances of business, uncertain contingencies, etc., they are recoverable; otherwise, not. The primary object in awarding damages is compensation to the injured party, which should be for the natural and proximate result of the wrong done, and the general rule aims to give compensation for the loss sustained and to put the party in as nearly the same condition as he would have been had the contract been performed, but, as between vendor and vendee of land for breaches of covenants, an exception to this general rule prevails to the extent that the vendee can recover of the vendor for breach of covenant only the amount of payments made, with interest and costs; but this rule between vendor and vendee does not apply to cases between lessor and lessee for breach of covenants of leases or rental contracts. The measure of damages in such cases is the loss the plaintiff has proximately sustained by reason of the breach of the contract.

[Prestwood v. Carlton.]

It has been held in some states, to wit, New York and Missouri, that the lessee could only recover the difference between the rent as provided for in the contract of lease and the rental value of the premises; but the rule adopted in most of the states, including that of Alabama, is that the lessee is entitled to recover the difference between the rent reserved and the value of the use of the premises for the term, together with other damages which are the direct and proximate result and natural consequence of the breach of the contract by the lessor, if such damages can be certainly and correctly estimated by reliable data. There are some cases in which profits constitute not only an element, but are the measure, of damages. There are some cases in which certain profits might not be recoverable as damages, yet proof thereof should be allowed as averring facts from which the jury could properly estimate the value of the lease to the tenant.—*Snodgrass v. Reynolds*, 79 Ala. 452, 58 Am. Rep. 601; *Brigham v. Carlisle*, 78 Ala. 243, 56 Am. Rep. 28; *Hodges v. Fries*, 34 Fla. 63, 15 South. 682; *Brent v. Parker*, 23 Fla. 200, 1 South. 780; *Sullivan v. McMillan*, 26 Fla. 543, 8 South. 450; note in 53 L. R. A. 33-112. It has recently been decided by this court that the measure of damages for the breach of a covenant for possession and enjoyment in a lease where the rent has not been paid is the difference between the value of the leasehold at the time of the breach and the amount of rents reserved covering the period of the nonenjoyment of the premises under the lease.—*Tyson v. Chestnutt*, 118 Ala. 406, 407, 24 South. 73, citing *Snodgrass v. Reynolds*, 79 Ala. 452, 58 Am. Rep. 601; *Chestnut v. Tyson*, 105 Ala. 149, 16 South. 723, 53 Am. St. Rep. 101, and note to same case, 53 Am. St. Rep. 116 et seq.

We have examined each of the assignments of error and each of the objections to the rulings of the court re-

lating to the elements and measures of damages, whether upon charges or as to the admissibility of evidence, but the exceptions and objections are too numerous to be treated separately. Suffice it to say that what we have said will be a sufficient guide in another trial. We find no reversible error in any of the rulings of the court as to the admissibility of evidence pertaining to the elements or measure of damages, and the charges given and refused at the request of the plaintiff and defendant as shown by the record are without error. This is certainly true as to the issues upon which this case was tried.

The measure of damages for breach of covenants as to leases of land is distinguishable, as stated above, from the measure of damages for breaches of covenants in deeds of conveyance of lands; and is also equally distinguishable from the cases under breaches of contracts for the sale and delivery of chattels. This latter class is illustrated in the cases of *Bell v. Reynolds,* 78 Ala. 511, 56 Am. Rep. 52, and *McFadden Bros. v. Henderson,* 128 Ala. 221, 29 South. 640; that is to say, the elements and measure of damages for breaches of covenants as to chattels real are distinguishable from breaches of covenants and warranties as to the sale of lands, and also as to breaches of contract for the sale of ordinary chattels. These cases cited above are cited and relied upon by counsel for appellant.

If the facts set forth in plea 3 are true, there was no breach of the covenants as alleged in any count of the complaint, and, of course, evidence tending to prove these facts, if otherwise competent and admissible, should not be excluded. We do not mean to hold by this that all of the evidence offered by the defendant or testified to by him tending to prove the facts alleged in said plea was competent. It might be incompetent for other reasons than those assigned on this trial in the lower

[W. T. Adams Machine Co. v. Turner.]

court, or those for which it was manifestly excluded in the lower court. The demurrer to the plea having been sustained, the evidence clearly appears to have been excluded (and properly so on that trial) for the reason that it did not tend to prove any issue raised by the plea.

For the errors pointed out, this cause must be reversed and remanded.

Reversed and remanded.

DOWDELL, C. J., and SIMPSON and DENSON, JJ., concur.