[Wooddy v. Matthews.]

# Wooddy v. Matthews.

### Bill for an Accounting and to Declare a Trust.

(Decided June 17, 1915.   Rehearing denied July 2, 1915.
69 South. 607.)

1. *Deeds; Validity; Fraud.*—Where a party signs and acknowledges a deed without reading it he cannot avoid it because not informed of its contents, unless he was induced by fraud to sign it; and to justify a setting aside of the deed, it must appear that a misrepresentation or concealment materially contributed as an inducement to the signing of the deed without reading it.

2. *Same; Burden of Proof.*—One who seeks to set aside a deed because of fraud inducing him to sign it without a knowledge of its contents, has the burden of proving the fraud by clear, convincing and satisfactory evidence; where the proof is uncertain in any material respect, it is not sufficient, although the court may feel that a great wrong has been done.

3. *Same; Confidential Relations; Undue Influence.*—Where a confidential relation existed between the parties to a deed at the time of its execution, and the grantee was the dominant party, the law presumes the exercise of undue influence, and to rebut this presumption, the grantee must show by clear and convincing proof that he acted in good faith, and did not take advantage of the grantor.

4. *Same.*—To raise the presumption that a deed was procured by the exercise of undue influence on the part of the grantee by reason of the existence of a confidential relation between the parties, the evidence must be clear and satisfactory that a confidential relation existed between them, and that the grantee was the dominant party in procuring the deed.

5. *Same.*—In this case the evidence is not sufficient to show the existence of a confidential relation between the parties, and therefore not sufficient to cast upon the grantee the burden of rebutting the presumption of undue influence.

6. *Same; Validity; Fraud.*—The evidence examined and held insufficient to show that the deed was procured by the fraud of the grantee.

7. *Estoppel; Vendor's Lien; Pleading.*—Where the grantor sought to set aside a deed on the ground of fraud, and the grantee admitted by his plea and evidence the validity of the grantor's claim for a vendor's lien for the unpaid purchase price, such grantee was precluded from denying in another suit the validity of the vendor's lien, and could only question the amount thereof.

APPEAL from Shelby Chancery Court.
Heard before Hon. W. W. WHITESIDE.

[Wooddy v. Matthews.]

Suit by Margaret Wooddy against K. N. Matthews for an accounting, and to declare a trust in certain lands, and to require a conveyance thereof to complainant. From a decree for respondent, complainant appeals. Affirmed.

The bill contained the following prayers:

The premises considered, your oratrix prays the court that the said K. N. Matthews be made a party respondent to this bill of complaint, and that the usual process issue out of your honor's court making him said party respondent, and that on final hearing your honor will state an account between the said K. N. Matthews and your oratrix, charging the said K. N. Matthews with the rents and profits from said lands described in Exhibit A hereto, for the years 1902, 1903, to 1912, both inclusive, and crediting him with the taxes paid on said lands and all the permanent improvements made on said lands, and charging him with any other moneys in his possession, and any and all amounts due your oratrix from the said K. N. Matthews, and crediting him with any and all amounts that may be found due him from your oratrix, and that on said final hearing your honor will declare and decree by the judgment of your honor's court that the said K. N. Matthews practiced a fraud on your oratrix in the preparation of said deeds, and in the procurement of the conveyances to him, instead of your oratrix, of a one-half interest of the said lands described in Exhibit A hereto, and that in equity and good conscience that your oratrix is entitled to a one-half interest in said lands described in Exhibit A hereto, and that the said K. N. Matthews holds title to said one-half interest in said lands as in trust for your oatrix, and that in equity and under the law he is not entitled to the same, and that the said K. N. Matthews be required to convey to your oratrix an undivided one-half interest in the lands de-

scribed in Exhibit A hereto, making your oratrix a quit-
claim deed conveying to her all of his rights, title, and
interest in said lands described in Exhibit A hereto, and
the said interest in said lands which he holds title to by
virtue of said conveyance, and that he be required to exe-
cute with proper acknowledgments a conveyance to your
oratrix to said one-half interest in said lands, and that,
if for any reason the said conveyance is not made by the
said K. N. Matthews to your oratrix, that your honor by
appropriate orders and decrees require the register of
this court to convey to your oratrix all the right, title,
and interest of the said K. N. Matthews in and to the
said lands described in Exhibit A hereto, and a title to
the said one-half interest which the said K. N. Matthews
holds to said lands, under and by virtue of said deed of
conveyance, a copy of which is Exhibit A hereto. And
if your oratrix is mistaken in the relief prayed, then she
prays for such other, further, and additional relief as
may seem to your honor meet and proper; and as in duty
bound she will ever pray.

RIDDLE, ELLIS & RIDDLE, for appellant.

A. & F. B. LATADY, for appellee.

THOMAS, J.—To enable the appellant to have the
relief sought, the allegation of the bill must be clear and
specific that appellee did not rightfully acquire her in-
terest in the lands sought to be divested out of him and
invested in her. Nor should she have such relief with-
out clear and convincing proof of facts showing that the
deed was procured by fraud of her right of ownership
therein. The evidence shows that in 1902 appellee was
the administrator of the estate of appellant's deceased
mother, and that appellant, Margaret Wooddy, and her
two sisters, Mrs. Sue Ware Matthews and Mrs. Bob

Ware Rogers, and one brother, E. M. Ware, were the sole heirs and distributees of said estate; that said heirs and distributees also owned real estate which had come to them from the estate of their deceased father; that at the time of the conveyance questioned all of the parties in interest sought to make an agreement of settlement and distribution among themselves of all the property of the respective estates of their mother and father. The evidence further shows that, prior to the said settlement and distribution, appellee had purchased from appellant's brother an undivided one-fourth interest in all of the said properties, and that appellee's wife, Sue Ware Matthews, owned a one-fourth interest which came to her from her said father's and mother's estates. By this settlement the appellee and wife received the deed in question to the lands in Shelby county from the two other heirs having an interest, Mrs. Bob Ware Rogers (and husband, J. H. Rogers), and appellant, Margaret Ware. It is further shown by the evidence that appellee has never paid Margaret Ware, now Margaret Wooddy, the amount which he claims was agreed on as the purchase price for interest in said lands.

The contention of appellant is that appellee practiced a fraud on her, in said settlement, in procuring the deed in question to be made to him and wife, instead of to appellant and her sister, appellee's wife. Complainant alleges in her bill that in this settlement "it was agreed that her brother, E. M. Ware, and her sister, Mrs. Bob Ware Rogers, and her husband, J. H. Rogers, would convey to appellant and appellee's wife, Sue Ware Matthews, their one-half interest in the land in Shelby county, involved in this suit;" that appellee was a party to this agreement, and was selected by the parties in interest to have the proper conveyances drawn in accordance with the agreement; that the deeds when presented

were signed by the parties without being read, on account of their confidence in appellee; and that she filed her bill on her late discovery that the deed was made to appellee and wife, and not to appellant and her sister.

This contention is denied by appellee, who insists that the deed executed in 1902 was in accordance with their agreement of settlement and distribution of the property; that he and his wife purchased appellant's interest in the property, giving his note for the balance of the purchase money. At the date of conveyance the land was worth about what appellee claims he agreed to pay, or the agreed price was not greatly disproportionate to its true value. At the time the deeds were executed, E. M. Ware had sold his undivided one-fourth interest in the property to appellee—a fact well known to each party. He did not sign the deed in question, and was not even present. The allegation in the sixth paragraph of the bill that he agreed to sign the deed with Mr. and Mrs. Rogers and appellant seems inconsistent with the fact that he did not then own an interest in the properties.

(1) The appellant was an intelligent person, and joined with her sister and brother-in-law, Mr. and Mrs. J. H. Rogers, in a conveyance of her interest to her sister and appellee, without reading the instrument. She then acknowledged before an officer that, being informed of the contents of the conveyance, she executed the same voluntarily on the day the same bore date. If, by fraudulent misrepresentations of its contents, she was induced by appellee to sign the deed without reading it, she would be excused.—*Beck v. Houppet,* 104 Ala. 503, 16 South. 522, 53 Am. St. Rep. 77; *Bank of Guntersville v. Webb,* 108 Ala. 132, 19 South. 14; *Tillis v. Austin,* 117 Ala. 262, 22 South. 975; *Leonard v. Roebuck,* 152 Ala. 312, 44 South. 390; *Prestwood v. Carlton,* 162 Ala. 327, 332, 50 South. 254; *B. R., L. & P. Co. v. Jordan,* 170 Ala. 530, 54

[Wooddy v. Matthews.]

South. 280. If a party signs an instrument without reading it, or having it read to him, if he cannot read, he cannot avoid it because not informed of its contents, unless there was fraud, deceit, or misrepresentation practiced upon him in its execution; for in such cases the law attributes ignorance of its contents to his own negligence.—*Prestwood v. Carlton, supra; Burroughs v. Pacific Guano Co.,* 81 Ala. 255, 1 South. 212; *Pacific Guano Co. v. Anglin,* 82 Ala. 492, 1 South. 852; *Cannon v. Lindsey,* 85 Ala. 198, 3 South. 676, 7 Am. St. Rep. 38; *B. R., L. & P. Co. v. Jordan, supra.* It was indispensable that a misrepresentation or concealment materially contributed as an inducement for her to sign without reading.—*So. L. & T. Co. v. Gissendaner,* 4 Ala. App. 523, 529, 58 South. 737.

(2) The burden is on one who seeks to set aside a conveyance of real estate, because of a fraudulent misrepresentation that induced the signature without a knowledge of its contents, to show such false and fraudulent inducement. The measure of proof required in such cases is that the evidence be "clear and convincing," or "the strongest possible," or "clear, exact, and satisfactory." —2 Pom. Eq. Jur. § 858; *Guilmartin v. Urquhart,* 82 Ala. 570, 1 South. 897. If the proof is uncertain in any material respect, it will be held insufficient, though the court may feel that a great wrong has been done; the court cannot grant the relief by reason of uncertainty.— *Hertzler v. Stevens,* 119 Ala. 333, 24 South. 521; *Alexander v. Caldwell,* 55 Ala. 517; *Berry v. Sowell,* 72 Ala. 17; 7 Mayf. Dig. 189.

(3) If the evidence showed that a confidential relation existed between the parties at the time of the execution of the conveyance, and that the grantee was the dominating spirit in the execution of the conveyance, the law would presume the exercise of undue influence; and to

rebut the presumption clear and convincing proof is required that the party claiming the benefit acted in good faith and did not take advantage of the weaker.—*Couch v. Couch,* 148 Ala. 332, 42 South. 624; 6 Mayf. Dig. 158. In such case, as Lord Eldon said: "It is not a question whether the party knew what he was doing, had done, or proposed to do, but how the intention was produced."—*Huguenin v. Baseley,* 14 Ves. 300.

(4) To raise this presumption the evidence must clearly and satisfactorily show: (1) That a confidential relation existed between the grantor and grantees; (2) that the grantee was the dominant spirit in procuring the execution of the conveyance. Who was the dominant spirit in such cases becomes a question of importance in the application of the burden of proof.—*McLeod v. McLeod,* 145 Ala. 269, 40 South. 414, 117 Am. St. Rep. 41. In *Curry v. Leonard,* 186 Ala. 666, 671, 65 South. 362, 364, this court said: "Actual fraud is not to be presumed, nor does the doctrine of confidential relations and its resultant rule as to the burden of proof become operative in cases of the sort here shown until something in the transaction arouses a just suspicion, and it is made reasonably to appear that the defendant held in general a position of actual dominating influence."

In *Curry's Case* the relation was that of landlord and superintendent, living in the same house, the latter having acted as her general agent, and the parties bore to each other an intimate relationship before and at the time of the questioned conveyance.

(5) Appellant testified that her mother died in 1899; that she and her two sisters lived in Goodwater, with their uncle, until after Sue Ware married appellee, when appellant and her sister, Bob Ware, moved with appellee and wife to Hanover, where they lived "several months;" that, when Bob Ware married Mr. J. H. Rogers, appel-

lant went back to Goodwater to live with Mr. and Mrs. Rogers. It is thus plain that appellant and her sister, Bob Ware, lived in the home of appellee for a short while only; that appellant remained constantly with her sister, Bob Ware, before and after her marriage, and to the time of the execution of the deed in question; that at all times she had the benefit of the independent advice and judgment of Mr. and Mrs. Rogers, and of her brother, E. M. Ware, rather than that of appellee and wife. She stated in her testimony that: "Me and my sisters and brother had a verbal agreement to divide up all the property which we owned, except Brother Tip (E. M. Ware). K. N. Matthews *was also present,* and he was a party to the agreement, and this was at the home of my sister, Mrs. Rogers, in Goodwater, where we made this agreement. Prior to this time Mrs. Matthews had bought Tip's interest in each of these estates and all of this property."

Though the evidence shows that appellee was the administrator of one of the estates being dealt with, the whole evidence being read and considered by the full court, no dominance by appellee is shown, and under all the facts it is not presumable.

(6) Was, then, the deed procured as the result of fraud practiced by appellee as charged? Appellant claims that to equalize her interest in the land she gave a note for $90 to appellee, that the note was signed in her brother-in-law's store, that Mr. Rogers was present, and that "Billy Newman" witnessed the same. The brother-in-law testified that she signed the note in his store and that his wife was present. Mrs. Rogers does not say that she was present when the note was signed, but that Matthews admitted to her that he received the note. On the trial appellant did not introduce "Billy Newman" as a witness, nor account for his absence. Appellee de-

nies that she gave such a note. He says, however, that he gave a note for the purchase money due appellant, and it was executed and delivered to her in Mr. Rogers' home the day the deeds were signed, or the following day. Mr. and Mrs. Rogers joined with appellant as grantors in the conveyance in question, and, as the learned chancellor states in his decree, the appellant and Mr. and Mrs. Rogers were "compelled to know that, when complainant signed said deed, such signing passed no title to her, but, on the contrary, conveyed away all the title which she already owned in said land."

This agreement of settlement involved not alone the interest of appellant. It was a purchase by appellee and wife, from the other heirs, of their interest of the Shelby county lands in question, and was a sale by them to Mr. and Mrs. Rogers of their interest in the house and lot in Goodwater. Mrs. Matthews owned a fourth interest by inheritance; her husband, by purchase from E. M. Ware, a fourth interest; and by deed in question Miss Margaret Ware and Mrs. Bob Ware Rogers and husband conveyed to appellee and wife the other half interest. Thus the appellee and wife acquired the Shelby county lands, and Mrs. Rogers the house and lot in Goodwater, and Miss Ware sold her interest in both tracts of land to said several grantees. No other reasonable explanation can be made of the contract of Mr. and Mrs. Rogers and Miss Ware in signing the deed in question, and of Mr. Matthews and wife in executing a deed to the Goodwater property. No insistence is made against or by Mrs. Rogers that a fraud was practiced in procuring the conveyance; nor is Mrs. Rogers disavowing her sole ownership of the house and lot. When Mr. and Mrs. Rogers received a separate deed to the lot in Goodwater, they knew that Mr. and Mrs. Matthews and appellant, each of whom executed the deed, were not named as grantees therein. It

is unreasonable to suppose that Mr. and Mrs. Rogers, when they joined with appellant in the execution of a conveyance to appellee and wife, though that appellant was a grantee therein. If it was agreed that appellant was to acquire an interest in the Shelby county lands, Mr. and Mrs. Rogers and Mr. and Mrs. Matthews would have joined in a conveyance to her of the interest she then acquired. Both Mr. and Mrs. Rogers and appellant were aware of the fact that appellee and wife joined in no such deed to appellant. If appellant was informed that, to convey her interest in the Goodwater lot to Mrs. Rogers, she must sign the deed to them, by the same token she must have known that when she signed the deed she was conveying her interest in the lands described to the grantees therein named.

The properties conveyed in the respective deeds were valued, as shown by the testimony of J. H. Rogers and K. N. Matthews, the Shelby county lands at $1,200, and the Goodwater lot at $800. When Mr. and Mrs. Matthews conveyed to Mrs. Rogers their half interest in the Goodwater lot, worth $400, to Matthews, how were they paid therefor, if not by an additional interest in the Shelby county lands? If Miss Margaret Ware was to have a half interest in the Shelby county land, how did she pay Mrs. Matthews for the additional interest she was acquiring from her by the purchase? If by the agreement a half interest was to pass to appellant, her distributive share of the estate being only $718.47, and she had received from Mr. Matthews, as administrator, about $200 in her education, she has not shown how she paid Mr. and Mrs. Matthews the purchase price for an interest in the lands that would equalize with them her holding. The $90 note claimed to have been given by appellant to appellee would not have done so.

Considering the yearly remittances made by appellee to appellant, in the aggregate, it is clear that no deduction for expense and maintenance of the land was made from the rentals. For the years 1903 to 1911, inclusive, the rents aggregated $1,150, and the expense of maintenance and buildings $726.72; appellee remitted to her, in nine annual installments, the sum of $449.35. This is confirmatory of appellee's testimony that he was undertaking to remit interest on some given sum, rather than half of the annual rents from the lands.

The report of final settlement of the Ware estate, in the probate court of Coosa county, of date January 15, 1900, shows that appellee charged himself, as administator, with the sale of the lands, and asked credits for certain vouchers submitted as having been paid to each heir, including appellant; the distributive share of each heir being shown as $718.47. The decree of the court recites a consent, signed by Mamie Ware Matthews, E. M. (Tip) Ware, Margaret Ware, the appellant, and Mr. and Mrs. Rogers, in which each acknowledged the receipt in full of his or her distributive share. This tends to show that at the time the parties treated the land as money, and that the distributive share was agreed to be $718.47.

Appellant and her sister contend that, to equalize the interests, appellant owed Matthews $90, and that for this a note was given. If this sum be deducted from the distributive share of $718.47, we have a balance of $628.47. That the sum paid her by appellee, $449.35, was about 8 per centum on $628.47 for about nine years, is persuasive that Margaret Ware treated her interest in the estate as in money, and at about that sum, and that appellee was paying her yearly interest, and not half the rents. It is the reasonable view of this long past transaction, that Mrs. Rogers was acquiring by purchase the

homestead at Goodwater, Mr. and Mrs. Matthews were acquiring the farm in Shelby county, and appellant was taking her patrimony in money, to be paid by Mr. Matthews.

The appellant alleges in her bill that, when she discovered the fraud in the procurement of the conveyance, she immediately filed her bill asserting her right. Appellee states that he exhibited to her the deed at his home in Huntsville, and explained that his child by Sue Ware his deceased wife, was thus provided for. Appellant admits that she was at appellee's home in Huntsville, but denies seeing the deed. The fact remains, however, that appellant's bill was not filed until ten years after the conveyance, after the death of Mrs. Matthews, her sister, and after the enhancement in value of the real estate, possibly, by the condemnation of the water power company for flood rights. When the deed was executed the appellant was unmarried, the lands were unimproved, and the rental was small. It was not unreasonable that her then condition should dictate that she receive in the settlement money rather than unimproved land. She admits in her testimony that this question was discussed between them at the time of the settlement.

Upon an examination of the record by the whole court (aside from the question of laches) [*Rives v. Morris,* 108 Ala. 527, 18 South. 743; *Hauser v. Foley Co.,* 190 Ala. 437, 67 South. 252; 5 Pom. Eq. Jur. § 21]), we are of the opinion that the chancellor reached the right conclusion under the pleading and the proof.

(7) It is clear that the appellant, Mrs. Margaret Wooddy, has a vendor's lien for the balance of the purchase money of $718.47 and interest, less such sums as may have been advanced to her by the administrator, or since paid to her by the appellee. She can enforce payment of the sum due her by appropriate remedy. In the

evidence in this case Mr. Matthews recognized the obligation. He would now be precluded by his plea and testimony to deny in another suit the validity of her claim. The amount only can now be questioned.

This court does not commit itself on the right, under the general payer of this bill, to enforce a vendor's lien in this suit, as suggested by counsel in argument.—Sims' Ch. Pr. §§ 288, 289.

The decree of the chancellor is sustained, and the case is affirmed.

Affirmed.

ANDERSON, C. J., and MCCLELLAN, MAYFIELD, SAYRE, SOMERVILLE, and GARDNER, JJ., concur.